LINDA DAVIS, APPELLANT, V.
TEXACO, INC., ET AL., APPELLEES.

313 N.W.2d 221

Filed December 4, 1981.   No. 43546.

Ronald J. Palagi and J. Michael Moriarty for appellant.

Michael McGill and Allen E. Daubman of McGill, Koley, Parsonage & Lanphier, P.C., for appellee Texaco.

Robert D. Mullin, Jr., of Boland, Mullin & Walsh for appellee Fornstrom.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BOSLAUGH, J.

This was an action against Texaco, Inc., and Tom Fornstrom to recover damages for personal injuries and intentional infliction of mental distress.

On June 15, 1977, the plaintiff, Linda Davis, stopped at the Texaco filling station in Omaha, Nebraska, operated by Fornstrom, because fluid was leaking from the engine compartment of her automobile. The attendant at the station raised the hood of the automobile and removed the radiator cap, which allowed the fluid to escape with great force from the radiator. Some of the fluid splashed onto the plaintiff, who was standing near the right front fender of the automobile, resulting in burns to her face, neck, and back.

The trial court did not submit the plaintiff's claim for damages resulting from intentional infliction of mental distress to the jury, but instructed the jury that the plaintiff might recover damages for mental distress proximately caused by the negligence of the defendants. The jury returned a verdict for the plaintiff in the amount of $500, and she has appealed. Her principal assignment of error is that the trial court erred in withdrawing her claim for mental distress from the jury.

The plaintiff's claim for intentional infliction of mental distress was based on what occurred after the radiator cap had been removed. After the radiator fluid had splashed onto the plaintiff, she ran a short distance until she ran into a parked car, and then fell to her knees on the drive of the station. The plaintiff's sister, who was with her, came to the plaintiff's aid by removing her shirt and partially removing her undergarments.

The plaintiff's sister requested a towel or covering of some kind for the plaintiff from the station attendants. The plaintiff and her sister testified that they had to request something to cover the plaintiff two or three times before a station employee provided them with a fender cover. The evidence is in conflict as to whether the attendants knew the plaintiff had been burned. The plaintiff and her sister then attempted to use the restroom of the station and found it locked. The sister got the key from the station attendants, and the plaintiff remained in the restroom while her sister went back to the car to find the plaintiff's purse. When the sister returned to the restroom, the plaintiff suggested they go to a hospital, so the two women reentered her car. The plaintiff and her sister attempted to start the car several times without success.

A station attendant told them that the car would not start until the fender cover was returned. After the fender cover was exchanged for an old Texaco shirt, the attendant replaced the coil wire, which he had removed from the engine to prevent them from starting the engine. After the coil wire had been replaced, the engine started and the women proceeded to a hospital, where the plaintiff received emergency treatment.

Recovery for intentional infliction of mental distress will not lie unless the character of the defendant's action is outrageous and the emotional distress inflicted upon the plaintiff is severe. In *Paasch v. Brown*, 193 Neb. 368, 370, 227 N.W.2d 402, 404 (1975), this court, citing Restatement (Second) of Torts § 46 (1965), stated:

" '(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.'" The *Paasch* opinion also noted: "Liability has been found only where the conduct has been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* at 370, 227 N.W.2d at 404.

Comment (d) to § 46 of the Restatement states in part at 73: "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. . . . There is no occasion for the law to intervene in every case where some one's feelings are hurt."

*Meyer v. Nottger*, 241 N.W.2d 911 (Iowa 1976), states that the conduct necessary to support such a claim "exceeds that which a reasonable person could be expected to endure." *Id.* at 918.

Furthermore, the emotional distress suffered by the plaintiff must be severe. According to the Restatement, "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity." Restatement, *supra*, Comment (j) at 77-78. See, also, *Vicnire v. Ford Motor Credit Co.*, 401 A.2d 148 (Me. 1979). *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 695, 271 N.W.2d 368, 378 (1978), states that proof of an "extreme disabling emotional response" is required. Both extreme and outrageous conduct and extreme emotional distress must be proved to support the claim. *Vicnire v. Ford Motor Credit Co., supra; Meyer v. Nottger, supra.*

The plaintiff makes no claim for emotional distress on any day other than the day on which the incident occurred. She relies upon the perceived unresponsiveness of the station attendants to her requests for a cover-

ing and the action of the attendant in disabling her car so that she could not leave the station without returning the fender cover. The record shows the plaintiff and her sister were detained by the removal of the coil wire for only a relatively brief period of time; the attendant did exchange the fender cover for another type of covering for the plaintiff; and he immediately replaced the coil wire after this exchange.

We are of the opinion that the conduct of the station attendants did not rise to the level of the extreme and outrageous conduct which is essential for conduct to be actionable for intentional infliction of emotional distress.

Although the plaintiff did suffer some embarrassment and humiliation as a result of the incident, there is no evidence of extreme mental distress in this case.

The plaintiff also contends that the instruction which allowed the plaintiff to recover damages for mental distress proximately caused by the negligence of the defendants was misleading and confusing. We have examined the instruction and have concluded that it was not erroneous when considered together with the other instructions to the jury.

The judgment of the District Court is therefore affirmed.

AFFIRMED.

WHITE, J., concurring.

I agree with the conclusion reached by the majority. The evidence indicates that the emotional distress inflicted upon the plaintiff in this unfortunate situation was not shown to be severe, and that absent such proof the plaintiff cannot recover.

The majority opinion is unclear as to whether or not it would find that there was sufficient evidence for a jury to find that the conduct was outrageous. I believe it was outrageous.

The evidence shows that a woman was burned by the negligent acts of a Texaco station employee. She was

compelled to remove her outer garments which were saturated with hot radiator fluid. She requested something to cover herself and was given a filthy fender skirt to cover her partial nakedness. While attempting to leave the premises to secure medical treatment while naturally upset, hysterical, and in pain, the woman found that a station attendant had removed the ignition coil from her automobile and he would not restore it unless she surrendered the fender cover, thus leaving her partially clad on a major thoroughfare in Omaha, Nebraska. Finally, she suffered the indignity of being forced to bargain for a used shirt. This conduct cannot be characterized as anything less than outrageous under any standard of civilized human behavior. The conduct was inexcusable, brutal, indifferent, and uncaring.

KRIVOSHA, C.J., joins in this concurrence.