B. E. Implement Co., appellant, v. Valley Farm, Inc., a Nebraska corporation, appellee.

343 N.W.2d 892

Filed January 27, 1984. No. 82-784.

Lance C. Antonson of Hines & Hines, for appellant.

James D. Owens of Owens and Owens, for appellee.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, Shanahan, and Grant, JJ.

Hastings, J.

This is an action for conversion of two new farm tractors brought by the plaintiff, a Texas corporation and implement dealer, against the defendant, a Nebraska corporation and also an implement dealer doing business in Benkelman, Nebraska. Trial was had to a jury, but at the close of all the evidence both parties moved for directed verdicts; that of the defendant was sustained, and the plaintiff's action was ordered dismissed. Plaintiff appeals.

The plaintiff assigns as errors generally the court's overruling of its motion and the granting of the defendant's; the exclusion from evidence of the security agreement because of lack of foundation; and the placing of the burden of proof on the plaintiff to establish that the defendant was not a buyer in the ordinary course of business under Neb. U.C.C. § 9-307 (Reissue 1980).

Contrary to the contention of the defendant, a motion for a directed verdict which is not granted is not a waiver of trial by jury. Neb. Rev. Stat. § 25-1315.01 (Reissue 1979). Therefore, in reviewing the action

of the trial court we must treat the defendant's motion for a directed verdict or dismissal as an admission of the truth of all competent evidence submitted on behalf of the plaintiff. The plaintiff is also entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *In re Estate of Thompson*, 214 Neb. 899, 336 N.W.2d 590 (1983).

By applying this rule we come to the conclusion that the action of the trial court was correct. In doing so we do not necessarily base our opinion on the reasons given by the trial judge in support of his judgment, and by the same token find it unnecessary to discuss the plaintiff's assignments of error.

Plaintiff's evidence was offered through the testimony of Aubrey Cox, its vice president, and G. W. Burdett, Jr., its sales manager. Their testimony would support the conclusion that someone who identified himself as George Higgins, and further identified himself as being engaged in agriculture, called Burdett on the telephone on or about August 22, 1978, to inquire about the purchase of two 4630 John Deere tractors. A purchase order, dated August 22, was filled out by Mr. Burdett calling for the sale of those two tractors to Higgins, with an August 23, 1978, delivery date.

Mr. Cox agreed that his signature appeared on the purchase order. There is also a signature purporting to be that of George W. Higgins, Jr., but there is no evidence as to who placed it there. The tractors were delivered to Higgins "somewhere between Oklahoma City and El Reno . . . somewhere west of Oklahoma City and then south about a mile or mile-and-a-half . . . ." The closest that either witness could fix the date of delivery was prior to the 29th, apparently in the month of August.

A retail installment contract - security agreement, exhibit 16, was prepared and dated August 29, 1978. It appears to contain the signature of Aubrey Cox

and George W. Higgins, Jr., although no verification of the latter's signature was ever produced. The exhibit recites that the debtor resides in Cleveland County, and shows the "place of filing" as Calumet, Oklahoma. However, the trial court refused to receive the exhibit in evidence because it was not declared as an exhibit at the pretrial conference nor within an additional 90 days' grace period provided by court rules. In any event, nothing appears on the face of exhibit 16 to indicate that it was ever recorded in a county clerk's or similar office. However, exhibit 3, denominated a "Financing Statement" and purporting to bear the signatures of Aubrey Cox and George W. Higgins, Jr., and describing the two 4630 tractors, bears a September 8, 1978, filing stamp of the county clerk of Cleveland County, Oklahoma.

Mr. Cox also testified that sometime after the original papers were prepared and forwarded to John Deere, he received the original note ("Retail Installment Contract - Security Agreement") from that company, as "they wanted it redrawn on the Oklahoma form." This was accomplished as of October 13, 1978, according to exhibit 5, which contains the requisite language granting a security agreement.

At some later time, according to Mr. Cox, he discovered that at least one of these tractors was supposed to be in Benkelman, Nebraska, and this action was filed.

According to the testimony of Stanley Ham, who was president of the defendant company at the time, in June of 1978 he ordered three 4630 John Deere tractors from George W. Higgins, Jr. He had his bank transfer $75,425 to Higgins' bank in Calumet, Oklahoma, which was in full payment of these tractors. He was later informed by Higgins that he could obtain but two tractors, so $25,250 was refunded to the defendant company on August 22, 1978.

The two tractors were received by Valley Farm,

according to Stanley Ham, a day or two or three later, which would be August 25 at the latest. These tractors were purchased by the defendant for resale in the course of business. As far as Ham knew, Higgins was a machinery dealer.

Tom Ham, the current president of Valley Farm, testified that the two tractors were delivered to the defendant company on August 25 or 26. Neither Stanley Ham nor Tom Ham checked for or knew that there were any liens filed on these tractors in Oklahoma.

According to their own testimony, one of these tractors was purchased from the defendant company by Roland Query, as disclosed by a purchase order dated August 12, 1978, which the witness thought should in fact have been September 12; the other tractor was sold to Dan Brown for K D Farms, Inc., by purchase order which called for a November 14, 1978, delivery but which was paid for in full by check dated September 27, 1978.

Other than the testimony of Stanley and Tom Ham, Harold McArthur, a John Deere dealer of some 45 years in Colorado, testified that he knew of George Higgins, Jr.; that Higgins advertised as a dealer in farm equipment; and that he, McArthur, had purchased some 21 John Deere tractors from him.

Both parties argue that Neb. U.C.C. §§ 9-301 et seq. (Reissue 1980) are applicable. Section 9-301 provides in part as follows: "(1) . . . an unperfected security interest is subordinate to the rights of . . . (c) . . . other buyer not in ordinary course of business . . . to the extent that he gives value and receives delivery of the collateral without knowledge of the security interest and before it is perfected."

Section 9-307 provides in part that "(1) A buyer in ordinary course of business (subsection (9) of section 1-201) . . . takes free of a security interest created by his seller even though the security interest is

perfected and even though the buyer knows of its existence.''

A buyer in the ordinary course of business is defined by § 1-201(9) as "a person who in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind . . . .''

Finally, § 9-302 provides that a "financing statement must be filed to perfect all security interests,'' with exceptions not applicable to the present situation.

If we accept the plaintiff's position that the defendant was a "buyer not in ordinary course of business,'' the fact remains that the evidence is undisputed that Valley Farm was a purchaser for value without notice, actual or implied, as of the date of purchase, August 26 at the latest. If so, any security interest of B. E. Implement is subordinate to the rights of Valley Farm under § 9-301(1) because of the September 8 filing of plaintiff's claimed financing statement.

On the other hand, accepting the defendant's position that it was a "buyer in ordinary course of business,'' the defendant took the tractors free of any alleged security interest as provided for in § 9-307(1).

"A conversion is any unauthorized act which deprives the owner of his property permanently or for an indefinite period of time.'' (Syllabus of the court.) *Mapledge Corp. v. Coker*, 167 Neb. 420, 93 N.W.2d 369 (1958).

" 'Conversion is any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.' '' *Indiana Harbor Belt R. Co. v. Alpirn*, 139 Neb. 14, 21, 296 N.W. 158, 159 (1941).

The acts of the defendant in assuming and exercising the rights of ownership over the tractors were neither unauthorized nor wrongfully exerted and, as

such, did not constitute conversion on its part. The judgment of the district court in dismissing the action was correct and is affirmed.

AFFIRMED.