FIVE POINTS BANK, A BANKING CORPORATION, APPELLEE, v. SCOULAR-BISHOP GRAIN CO., DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLANT, DUANE STEVENSON, THIRD-PARTY DEFENDANT, APPELLEE.

350 N.W.2d 549

Filed June 22, 1984. No. 83-494.

Edward D. Hotz of Hotz, Kizer & Jahn, P.C., for appellant.

Cunningham, Blackburn, VonSeggern, Livingston, Francis & Riley, for appellee Five Points Bank.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

Defendant, Scoular-Bishop Grain Co. (Scoular-Bishop), appeals the directed verdict in favor of the plaintiff, Five Points Bank (bank), in an action for conversion involving the sale of grain. At the conclusion of all the evidence the district court granted the bank's motion for directed verdict, entered a judgment for the bank in the sum of $9,100, and discharged the jury.

The bank brought suit against Scoular-Bishop for grain purchased from Duane Stevenson subject to a recorded security interest in favor of the bank. In May 1981 Stevenson, who had a marginal operation, had pledged certain crops grown on leased land as security for a farm operating loan. The loan and security payment were the result of preliminary discussions held in February 1981 regarding his financial needs for the upcoming crop year.

During the preliminary financing discussions, Stevenson was encouraged by William Marshall,

president of the bank, to obtain his fertilizer by a credit or open account, if possible, to minimize the operating loan. As a consequence, Stevenson approached Scoular-Bishop for financing, and Scoular-Bishop gave Stevenson the fertilizer needed for the 1981 crop in the spring, with the understanding that the cost would be deducted from the purchase price of the grain in the fall.

In the fall of 1981 Scoular-Bishop also advanced Stevenson $800 for repairs on Stevenson's combine, which had broken down in the field during harvest. This amount was also added to the open account. The money for combine repairs was advanced by Scoular-Bishop after Stevenson had first asked the bank for the money and was refused. According to Duane Stevenson, William Marshall, who normally took care of the Stevenson account, was absent and Ed O'Boyle, another bank employee, refused to loan him the money. O'Boyle acknowledged that another advance on the corn crop would have to be taken.

At the time of the sale of the crop, $9,100 was withheld from Stevenson's crop proceeds and the balance was paid to the bank and Stevenson. The amount received by the bank was not sufficient to pay the note, and the note was in default.

Scoular-Bishop defends, claiming that the bank knew or should have known about the oral agreement for furnishing the fertilizer; that the practice of setoff against the proceeds of grain sales for the payment of fertilizer accounts is the course of dealing and usage of trade of the farm industry and local area; and that the bank expressly or impliedly acquiesced in the right of setoff by the defendant.

In this appeal Scoular-Bishop claims the trial court erred by directing a verdict in favor of the bank and not submitting to the jury the issue of authorization to sell collateral to Scoular-Bishop.

Under Neb. U.C.C. § 9-201 (Reissue 1980), a security agreement is effective according to its terms between the parties, against purchasers of the col-

lateral and against creditors, except as otherwise provided in the act. One exception is Neb. U.C.C. § 9-307 (Reissue 1980), which provides in part: "A buyer in ordinary course of business . . . other than a person buying farm products from a person engaged in farming operations takes free of a security interest . . . ." This exception permits secured parties to follow farm products into the hands of a good faith purchaser unless consent to sell has been given pursuant to Neb. U.C.C. § 9-306(2) (Reissue 1980), which states:

Except where this article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement *or otherwise*, and also continues in any identifiable proceeds including collections received by the debtor.

(Emphasis supplied.)

It is clear the security agreement in question did not grant authorization. The security agreement does not authorize the sale of collateral except by written consent, which was not obtained. Scoular-Bishop relies on the "or otherwise" authorization to argue that a factual question of waiver exists and should be presented to the jury.

We have recently considered the "or otherwise" term of § 9-306(2) where there was a claim of waiver of written consent in *State Bank v. Scoular-Bishop Grain Co., ante* p. 379, 349 N.W.2d 912 (1984). In that case we held it was a factual question whether a bank's prior course of dealing with the debtor might create an implied agreement amounting to a waiver of the security interest, when we reversed a directed verdict in favor of the bank.

Although this court has previously considered and does consider the "or otherwise" term of § 9-306(2) on a case-by-case basis, the recent decision in *State Bank* is helpful to the court in the present case.

Waiver has been defined as a voluntary and intentional relinquishment or abandonment of a known existing legal right, advantage, benefit, claim, or privilege, which except for such waiver the party would have enjoyed; the voluntary abandonment or surrender, by a capable person, of a right known by him to exist, with the intent that such right shall be surrendered and such person forever deprived of its benefits; or such conduct as warrants an inference of the relinquishment of such right; or the intentional doing of an act inconsistent with claiming it. *State Bank, supra.*

We have held that, ordinarily, to establish waiver of a legal right there must be a clear, unequivocal, and decisive act of a party showing such a purpose, or acts amounting to an estoppel on his part. *Farmers State Bank v. Edison Non-Stock Coop. Assn.*, 190 Neb. 789, 212 N.W.2d 625 (1973).

This case is before us on appeal from a directed verdict. In reviewing the action of the trial court, we must treat the plaintiff's motion for a directed verdict as an admission of the truth of all competent evidence submitted on behalf of the defendant. Such being the case, Scoular-Bishop (defendant) is entitled to have every controverted fact resolved in its favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *B. E. Implement Co. v. Valley Farm, Inc.*, 216 Neb. 629, 343 N.W.2d 892 (1984).

By applying this rule we believe that the action of the trial court was incorrect. In the case before us the discussion and conduct between the bank and Stevenson raise a question of fact whether the "or otherwise" authorization occurred.

The case before us is similar to *State Bank* and distinguishable from *Farmers State Bank*, a conversion case with similar facts, because, after considering the evidence as a whole and giving Scoular-Bishop the benefit of every inference which can

reasonably be deduced, a question of implied authorization arises for the jury.

In *Farmers State Bank* there was evidence that prior to grain sales, the president of the plaintiff bank had discussed disposition of certain crops with the debtor, Nelson, during the growing season and that the bank did not at any time waive any rights to the security, nor was there authorization for any sale except a sale within the limits authorized by the written security and financing statement. In the present case we have evidence of the opposite. Here, we have the testimony of Stevenson stating the bank president was told that the fertilizer account would be set off from the grain sales.

In conclusion, we would refer to the statement of caution expressed in *State Bank*, and emphasize that such an implied agreement should be found with extreme hesitancy and that in these cases the standard of proof must be by clear and convincing evidence.

REVERSED AND REMANDED FOR A NEW TRIAL.