LARSON, Senior District Judge.
Both the Federal Deposit Insurance Corporation (FDIC) and the Neu Cheese Company appeal from the district court’s order affirming a judgment entered by the bankruptcy court in favor of the FDIC. Because we agree with Neu Cheese that the bank waived any interest it had in the milk purchased by Neu Cheese, we reverse the decision of the district court and order that judgment be entered in favor of Neu Cheese.
The facts involved in the instant appeal are essentially undisputed. Debtor Lawrence Jensen was a dairy farmer. From 1964 through 1983 he borrowed money from the Bank of Verdigre and Trust Company to finance his operations and executed various security agreements which gave the bank a security interest in all of Jensen's cows, the milk produced therefrom, and the proceeds from the sale of the milk. From January 4, 1980, through January 4, 1984, Jensen sold his milk to Neu Cheese, a dairy which manufactures milk into specialty cheeses. The bank never objected to any of the sales and never filed an assignment with the dairy. Jensen deposited the checks he received from Neu Cheese into his personal account at the bank.
In January, 1984, the bank brought suit against Neu Cheese in state court, alleging that Neu Cheese had wrongfully converted Jensen’s milk. Jensen filed for bankruptcy in October, 1984, and Neu Cheese removed the case to bankruptcy court. The bank was subsequently ordered closed and the FDIC was appointed as the receiver for the bank.
After trial, the bankruptcy court held that Neu Cheese was liable to the FDIC in the amount of $63,368.71, and the district court affirmed this judgment. Neu Cheese contends on appeal that it is not liable to the FDIC because the bank waived any security interest it might have had in the debtor’s milk through its course of dealing. The FDIC contends that this Court lacks jurisdiction over Neu Cheese’s appeal, and, alternatively, argues that it is entitled to a larger judgment in its favor because the district court applied the wrong statute of limitation.
I. JURISDICTION
As an initial matter, we must address the issue of this Court’s jurisdiction. The FDIC filed a motion to dismiss Neu Cheese’s appeal for lack of jurisdiction on January 28, 1987, and on March 6, 1987, this Court denied the motion. The FDIC has reasserted the question of lack of jurisdiction in its brief and at oral argument before the Court. Ordinarily we would not pass upon this question once our Court has acted, but in the case of jurisdictional concerns this Court may always review its orders to avoid clear error, whenever it deems necessary. Defendant-appellant Neu Cheese filed a premature notice of appeal in the district court on October 10, 1986. At the same time, Neu Cheese filed a motion for rehearing. The Court of Appeals clerk’s office notified Neu Cheese’s attorney that the notice of appeal was premature and that “we are withholding docketing this appeal because of the pending defendant’s motion for rehearing.” At the same time, the clerk’s office wrote that the district court should forward to the Court of Appeals clerk’s office two certified copies of its ruling on the motion together with updated docket entries. Because of the pending motion for rehearing, the notice of appeal filed in October had no legal effect. See Federal Rules of Appellate Procedure, Rule 4(a). Under these circumstances, it would have been Neu Cheese’s duty to file a new notice of appeal following the trial court’s ruling on its motion for rehearing. However, in the present case, we find that our clerk’s office did not docket the appeal until November 17 and at that time showed that the fee was paid and at that time filed the certified copies of the notice of appeal docket entries and judgment from the district court. On this basis, the Court finds that sufficient compliance with Rule 4(a) occurred and that although a new notice of appeal was not docketed in the district court, the clerk's office docketed the appeal on a timely basis. It was on this basis that our Court ruled on March 5, 1987, that the motion to *1272 dismiss for lack of jurisdiction was to be denied. We now reaffirm this ruling because there was substantial compliance with Rule 4(a) by the appellant through the agency of the clerk’s office.
In effect, the clerk’s letter of October 30, 1986, lulled Neu Cheese's counsel into believing that the appeal would be docketed at the time that the motion for rehearing was overruled. In fact, this was done. Since that time, the practice of our clerk’s office has changed, and, when a premature motion is filed in accordance with Rule 4(a)(4), the appellant is notified that a new notice of appeal must be filed within the prescribed time and that no additional fees will be required for such filing. In this case, although a new notice of appeal was not filed, the clerk’s office, in effect, filed the previous notice of appeal as a new notice of appeal within the prescribed time. We emphasize that all counsel in the future should follow the literal language of Rule 4(a)(4) and file a new notice of appeal within the prescribed time in the district court. On this basis, we find that this Court has jurisdiction and we now entertain the merits of the appeal.
II. THE MERITS
The primary issue on the merits is whether the bank waived its rights under security agreements signed by the debtor which gave the bank an interest in the milk and any proceeds therefrom. The parties disagree as to the appropriate standard of review on this issue. Neu Cheese contends that whether there has been a waiver may be determined as a matter of law, but we agree with the FDIC that the question of waiver is a factual one, which must be evaluated under the clearly erroneous standard. See In re Hunter, 771 F.2d 1126, 1129 n. 3 (8th Cir.1985); In re Martin, 761 F.2d 472, 474 (8th Cir.1985); Farmers State Bank v. Farmland Foods, Inc., 225 Neb. 1, 402 N.W.2d 277, 282 (1987). Relying primarily on two Nebraska Supreme Court cases, State Bank v. Scoular-Bishop Grain Co., 217 Neb. 379, 349 N.W.2d 912 (1984), and Five Points Bank v. Scoular-Bishop Grain Co., 217 Neb. 677, 350 N.W.2d 549 (1984), the FDIC argues that the bankruptcy court did not clearly err in its determination that Neu Cheese failed to prove the bank had waived its security interest in the debtor’s milk. We now address this contention.
It is undisputed that the security agreements between the debtor and the bank covered the debtor's milk and required the debtor to obtain written consent from the bank before any sale or disposition of the milk could take place. For the entire duration of their relationship, however, the bank allowed Jensen to sell his milk without written consent. The bank was aware that Jensen was a dairy farmer. His milk was picked up every two days and he received a check for the milk every two weeks, which the bank knew he deposited in his personal account. Yet, the bank never objected to this practice and never filed a milk assignment with the dairy requesting a portion of the proceeds be paid directly to the bank.
The question of whether these actions constituted waiver of the bank’s security interest in the milk must be resolved by reference to Nebraska U.C.C. § 9-306(2), which states in relevant part:
a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise.
(Emphasis supplied.)
Both the bankruptcy court and the district court rejected Neu Cheese’s argument that the bank had “otherwise” authorized the sale of the collateral under section 9-306(2), noting that the bank’s course of conduct amounted only to acquiescence, which was insufficient to establish waiver. The Nebraska Supreme Court has since spoken directly to this issue, however, in Farmers State Bank v. Farmland Foods, Inc., 225 Neb. 1, 402 N.W.2d 277 (1987). In Farmers, as in the case at bar, the debtor had signed a security agreement which required the bank’s written consent prior to any sale of collateral. The debtor nonetheless sold his hogs, which were subject to the security agreement, on over 130 occa *1273 sions over a six year period without obtaining the bank’s consent. The bank knew of the sales since the debtor would take the checks obtained from the sales and apply them to his loan at the bank.
In a suit by the bank against the purchaser of the hogs, the Nebraska Supreme Court held that these facts were sufficient to establish a waiver of the bank’s security interest:
We hold that performance under a security agreement, including the failure of the secured party to rebuke the debtor or object to the debtor’s conduct in selling collateral in violation of the terms of the security agreement, may amount to a waiver of the lender’s contractual right to require its written consent to a sale of collateral.
Id. 402 N.W.2d at 282.
We find the undisputed facts of this case point even more strongly to a finding of waiver than those present in Farmers. The course of dealing between the debtor and the bank had been established for almost twenty years. The bank knew the debtor was engaged in dairy farming and knew its collateral — milk—was a perishable commodity. Neu Cheese picked up the debtor’s milk every two days and paid the debtor a check for the proceeds every two weeks, as was the custom and practice of the dairy industry. On virtually all of these occasions, the debtor deposited his check from Neu Cheese in his account at the bank and the bank never objected to this procedure. Considering only the four year period that Neu Cheese purchased milk from the debtor (and not the many prior years in which the debtor sold his milk in this same fashion), the bank acquiesced to the sale of the debtor’s milk on over 700 occasions and acquiesced to the payment of the proceeds directly to the debtor on over 100 occasions.
The FDIC contends that the bank’s properly recorded security agreements should have placed Neu Cheese on notice of the bank’s security interest and, in effect, that the bank need do nothing more than rely upon its recording to protect this interest. The Nebraska Supreme Court rejected this contention in Farmers, 402 N.W.2d at 281, and we find it unpersuasive here. The evidence in this case reveals that Neu Cheese purchased milk from approximately 300 dairy farmers and made out 900 checks every two weeks to pay both producers and their creditors, honoring the milk assignments filed with the dairy by the creditors. The bank in this case not only failed to object to the debtor’s numerous sales of milk and personal use of the proceeds therefrom, but it also chose not to file an assignment with the dairy, as the evidence shows was the custom and practice of dairy industry creditors.
Under these circumstances, the only conclusion that can be drawn is that the bank waived its rights in the collateral. See In re Selden, 58 B.R. 667, 670-75 (D.Neb.1986) (bank’s failure to object to almost daily sale of milk, daily use of grain and hay to feed livestock and regular sale of livestock over four year period constituted waiver). As the Farmers Court emphasized, Nebraska law defines waiver as the “voluntary and intentional relinquishment or abandonment of a known existing legal right ... or such conduct as warrants an inference of the relinquishment of such right....” 402 N.W.2d at 280 (citing Five Points Bank v. Scoular-Bishop Grain Co., 217 Neb. 677, 681, 350 N.W.2d 549, 552 (1984)). There is no doubt, based on principles enunciated in Farmers and the record before us, that the bank’s conduct warrants an inference of the relinquishment of the bank’s right in the the collateral. The finding of the court below to the contrary is clearly erroneous and cannot stand.[1]
III. CONCLUSION
For the reasons discussed above, we hold the Court has jurisdiction to entertain this appeal, and because we find the bank waived its rights under its security agreement, we reverse the decision of the dis *1274 trict court and order that judgment be entered in favor of defendant Neu Cheese.

. Because of our decision on the waiver issue, we need not decide and do not reach the issue of the proper statute of limitation, which was raised by the FDIC in its cross-appeal.