JOYCE SELL, APPELLEE, V. MARY LANNING MEMORIAL HOSPITAL ASSOCIATION, APPELLANT.

498 N.W.2d 522

Filed April 16, 1993.    No. S-90-980.

John A. Wagoner and Robert W. Wagoner for appellant.

Gary J. Nedved, of Bruckner, O'Gara, Keating, Sievers & Hendry, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, FAHRNBRUCH, and LANPHIER, JJ.

PER CURIAM.

Joyce Sell, plaintiff, brought an action against Mary Lanning Memorial Hospital Association (Hospital) for negligent infliction of emotional distress. The petition sought recovery for injuries sustained by plaintiff after the Hospital had mistakenly advised her that her son had died from injuries he sustained in an accident. The case was tried in the district court for Adams County, where the jury returned a verdict for plaintiff in the amount of $15,000. The Hospital timely appealed to this court.

## BACKGROUND

The record shows that during the late evening of June 13, 1987, Scott Sell and Jon Stones, both then 17 years old, were critically injured when the motorcycle they were riding collided with an automobile. Both Scott Sell and Jon Stones were thereafter taken by ambulance to the emergency room of the

Hospital, where they arrived shortly after midnight on June 14. Jon Stones was pronounced dead at the Hospital at 1:10 a.m.

Wayne Kimminau, a friend of the boys', was at the emergency room when the ambulance arrived and gave the Hospital's personnel the names of the boys and the names and addresses of their parents. There is some dispute as to whether Kimminau also identified the boys themselves for the Hospital's personnel.

Plaintiff, who is the mother of Scott Sell, and the rest of Scott Sell's immediate family arrived at the Hospital at approximately 1 a.m. At 1:30, the emergency room physician, Dr. Lawrence Banta, advised them that Scott Sell had died at 1:10 as a result of injuries suffered in the accident. The identification of the decedent had been provided to Dr. Banta by an emergency room nurse. Dr. Banta thereafter asked the Sells if they wished to view the body, but they declined to do so and went home instead.

Plaintiff and her family began making burial arrangements the next day, Sunday, including selecting a casket and taking Scott Sell's clothes and graduation picture to the mortuary. On Monday, the Sells chose a burial plot at the cemetery and selected the flower arrangements for the funeral. The Sells then went to the mortuary Monday afternoon to finalize the burial arrangements. Upon their arrival, the mortician asked plaintiff and her husband to view the body of their son. When the casket was opened, plaintiff and her husband saw the body of Jon Stones.

Plaintiff and her family immediately proceeded to the Hospital, where they demanded to see the patient in the intensive care unit. Lt. Stephen Murphy of the Hastings Police Department met the family in the lobby and directed them into a conference room while the patient in the intensive care unit was identified. All during these events, Jean Stones, the mother of Jon Stones, and her father, Charles Theesen, had kept a 24-hour vigil at the bedside of the patient in intensive care, believing it to be Jon Stones. After the Sells arrived at the Hospital, a positive identification was made, identifying the boy in intensive care as their son, Scott Sell.

## ASSIGNMENTS OF ERROR

The Hospital assigns four errors, contending that the trial court: (1) erred in failing to hold as a matter of law that plaintiff did not establish a prima facie case of negligent infliction of emotional distress, and, thus, it was error to overrule the Hospital's motion for a directed verdict; (2) erred in not giving the jury a superseding/intervening instruction when requested to do so by the Hospital when the evidence clearly supported one; (3) erred in submitting instructions on the elements of a cause of action for negligent infliction of emotional distress, on proximate cause, and on damages when there was no evidence to support the giving of such instructions; and (4) erred in overruling the Hospital's motion for new trial or, in the alternative, its motion for a judgment notwithstanding the verdict.

## STANDARD OF REVIEW

A directed verdict is proper only where reasonable minds cannot differ and can draw but one conclusion from the evidence, where an issue should be decided as a matter of law. *Schleich v. Archbishop Bergan Mercy Hosp.*, 241 Neb. 765, 491 N.W.2d 307 (1992); *Commerce Sav. Scottsbluff v. F.H. Schafer Elev.*, 231 Neb. 288, 436 N.W.2d 151 (1989). In reviewing the action of a trial court, we must treat the defendant's motion for a directed verdict as an admission of the truth of all competent evidence submitted on behalf of the plaintiff. Such being the case, the plaintiff is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be deduced from the evidence. *Five Points Bank v. Scoular-Bishop Grain Co.*, 217 Neb. 677, 350 N.W.2d 549 (1984); *B. E. Implement Co. v. Valley Farm*, 216 Neb. 269, 343 N.W.2d 892 (1984).

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

The Hospital first contends that plaintiff failed to establish a prima facie cause of action for negligent infliction of emotional distress. We agree, but not for the reasons cited by the Hospital.

The Hospital relies on *James v. Lieb*, 221 Neb. 47, 375 N.W.2d 109 (1985), where this court abolished the strict "zone

of danger" requirement, adopting instead the "bystander recovery" test. Under this approach, a plaintiff bystander can recover for negligently inflicted suffering resulting from the plaintiff's concern for the safety of another if (1) there was a marital or intimate familial relationship between the plaintiff and the victim and (2) the plaintiff's emotional trauma resulted from either death or serious injury to the victim. If this were the only avenue for an action for negligent infliction of emotional distress, the Hospital's contentions would be correct. Plaintiff's son did not suffer serious injury or death due to the Hospital's negligence.

However, in three recent cases we have demonstrated a willingness to recognize a cause of action for negligent infliction of emotional distress by a "direct victim" of a defendant's negligence. In the first of these cases, *Turek v. St. Elizabeth Comm. Health Ctr.*, 241 Neb. 467, 488 N.W.2d 567 (1992), the plaintiff brought an action against a hospital for negligent infliction of emotional distress. The plaintiff claimed that he suffered emotional distress after learning that while he was in the hospital he had received treatment from a nurse not licensed to administer such treatment. We affirmed the trial court's dismissal of the case upon a finding that there was no negligence by the defendant hospital which would support such an action.

In *Schleich v. Archbishop Bergan Mercy Hosp.*, 241 Neb. 765, 491 N.W.2d 307 (1992), decided shortly after *Turek*, the plaintiff brought an action against a hospital for negligent infliction of emotional distress after the hospital reported to the county coroner unusual circumstances surrounding the death of the plaintiff's daughter. This report resulted in the plaintiff's being questioned by the police concerning her daughter's death, which questioning the plaintiff claimed caused her emotional distress. We stated that "[i]n order to recover, the plaintiff was required to show that a negligent act of the defendant's proximately caused her to suffer severe emotional distress." *Schleich*, 241 Neb. at 769, 491 N.W.2d at 310. Again, however, no negligence by the defendant was proven by the plaintiff, nor was there a showing of severe emotional distress, so no recovery could be had.

In the most recent case, *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 731, 496 N.W.2d 914 (1993), the plaintiff brought an action against her father's employer after discovering that her father had accidently been killed on the job. We found that there was no evidence that the death of the plaintiff's father "had an extraordinary effect, either psychological or physical," on the plaintiff. *Id.* at 734, 496 N.W.2d at 916. Accordingly, there was not " 'emotional distress' sufficiently severe and medically significant to be actionable under Nebraska law." *Id.* We therefore affirmed the district court's summary judgment.

This case is most similar to *Parrish*. This court has held that as a prerequisite to a valid claim for negligent infliction of emotional distress, "the plaintiff [is] required to show that a negligent act of the defendant's proximately caused her to suffer severe emotional distress." *Schleich*, 241 Neb. at 769, 491 N.W.2d at 310. The facts of this case support the first two requirements for a claim of negligent infliction of emotional distress: that the Hospital was negligent and that this negligence was the proximate cause of plaintiff's injury.

However, the third requirement of the claim, medically diagnosable emotional distress, disposes of this appeal. In elaborating upon the third requirement, we have stated:

> To be actionable, emotional distress must have been so severe that no reasonable person could have been expected to endure it. *Hassing v. Wortman*, 214 Neb. 154, 333 N.W.2d 765 (1983); *Gall v. Great Western Sugar Co.*, 219 Neb. 354, 363 N.W.2d 373 (1985); *Davis v. Texaco, Inc.*, 210 Neb. 67, 313 N.W.2d 221 (1981). Furthermore, the emotional anguish or mental harm must be *medically diagnosable* and must be of sufficient severity that it is *medically significant*.

(Emphasis supplied.) *Schleich*, 241 Neb. at 770-71, 491 N.W.2d at 310-11. Accord *Parrish, supra.*

The record shows that after being misinformed of her son's death, plaintiff was continually crying, had trouble eating and sleeping, and at some point had to be put on medication so that she could rest. Dr. Banta, the physician who mistakenly informed plaintiff of her son's death, testified that after receiving the news, plaintiff was in a "state of shock." Dr.

Banta, who was receiving training in psychiatry at the time, further added that he was referring to "shock" as a layman would understand it and not "shock" in medical terms, which would require fainting or the like. Plaintiff's husband testified that upon receiving the news, plaintiff was a "basket case" and had to be helped from the Hospital. Finally, plaintiff herself testified that due to this episode, her "life [will] never be the same . . . [b]ecause you always think about it."

Without minimizing plaintiff's apparent and understandable heartache upon being told of her son's death, we find that "an action for emotional distress is a particular type of legal action which requires 'emotional distress . . . so severe that no reasonable person could have been expected to endure it,' " emotional distress evidencing " 'sufficient severity that it is medically significant.' " *Parrish*, 242 Neb. at 734, 496 N.W.2d at 916 (citing *Schleich, supra*). Under that standard, plaintiff failed to present a prima facie case of negligent infliction of emotional distress. The district court should have found as a matter of law that the Hospital was entitled to a directed verdict and should have dismissed the cause at the close of plaintiff's case.

## CONCLUSION

Plaintiff failed to establish a prima facie cause of action for negligent infliction of emotional distress. Thus, the Hospital's motion for a directed verdict should have been granted. Accordingly, the trial court's judgment is reversed, and the cause is remanded with directions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.

FAHRNBRUCH, J., concurs in the result.

CAPORALE, J., concurring.

I concur with the majority's conclusion that the district court's judgment must be reversed and the cause remanded for dismissal, but I differ as to the reason.

In my view the plaintiff, Joyce Sell, has failed to prove any facts constituting a cause of action, notwithstanding that the record supports a finding that the defendant, Mary Lanning Memorial Hospital Association, violated its own rules

concerning the identification of unconscious or dead persons brought to it. We have defined a "cause of action" as a set of facts on which recovery may be had. *Lewis v. Poduska*, 240 Neb. 312, 481 N.W.2d 898 (1992). Stated in a slightly different way, a cause of action consists of a fact or facts that give one a right to judicial relief. *Widga v. Sandell*, 236 Neb. 798, 464 N.W.2d 155 (1991). In more elaborate terms, a cause of action is the judicial protection of one's recognized right or interest when another, owing a corresponding duty not to invade or violate such right or interest, has caused a breach of that duty. *Millman v. County of Butler*, 235 Neb. 915, 458 N.W.2d 207 (1990). Thus, inherent in a common-law cause of action is the juridical determination that a given set of facts gives rise to a right or interest the violation of which warrants vindication.

I have difficulty accepting the notion that the courts must intervene each and every time a mistake has been made and rush to assuage one's transitory psychic reaction with a monetary award. The most important factors to take into account in determining whether a court should take cognizance of an occurrence and give common-law relief are the nature of the mistake and the resulting consequences.

Under the circumstances presented in this case, it seems to me we should shed tears for the loss of young Jon Stones' life, empathize with the grief of his family and friends, rejoice in Scott Sell's life, and move on.

LANPHIER, J., dissenting.

The majority today, in ratifying the Hospital's allegation that it was necessary for plaintiff to adduce expert medical or psychological evidence regarding her mental suffering and distress, ignores the obvious. The requirement that emotional distress be "medically diagnosible" as set forth in *Parrish v. Omaha Pub. Power Dist.*, 242 Neb. 731, 496 N.W.2d 914 (1993); *Schleich v. Archbishop Bergan Mercy Hosp.*, 241 Neb. 765, 491 N.W.2d 307 (1992); and *Turek v. St. Elizabeth Comm. Health Ctr.*, 241 Neb. 467, 488 N.W.2d 567 (1992), should not be read to mean "*diagnosed.*" While I agree that the court has stated that to be actionable, " 'emotional distress must have been so severe that no reasonable person could have been

expected to endure it,' " I disagree that explicit proof of such distress by way of expert testimony is necessary in every case, particularly in this case.

In *Eiting v. Godding*, 191 Neb. 88, 91, 214 N.W.2d 241, 243-44 (1974), this court stated:

> In personal injury cases where the injuries are objective and the conclusion to be drawn from proved basic facts does not require special technical knowledge or science, the use of expert testimony is not legally necessary. [Citation omitted.]
>
> Courts generally limit such cases to those where the causal connection is clearly apparent from the injury itself and the circumstances surrounding it or where the cause of the injury relates to matters of common experience, knowledge, and observation of laymen.

It does not require "special technical knowledge or science" in order to realize that a parent would suffer emotional distress as a result of the notification of the death of a child. We should not close our eyes to what the rest of the world can see. We recognized this in *James v. Lieb*, 221 Neb. 47, 53, 375 N.W.2d 109, 113 (1985), when we quoted approvingly from *Portee v. Jaffee*, 84 N.J. 88, 417 A.2d 521 (1980):

> "[T]he interest assertedly injured is more than a general interest in emotional tranquility. It is the profound and abiding sentiment of parental love. The knowledge that loved ones are safe and whole is the deepest wellspring of emotional welfare. Against that reassuring background, the flashes of anxiety and disappointment that mar our lives take on safer hues. No loss is greater than the loss of a loved one, and no tragedy is more wrenching than the helpless apprehension of the death or serious injury of one whose very existence is a precious treasure."

I can find no better expression that the loss of a child causes emotional suffering of such a universal character that no further proof of injury is necessary. The trial court read that portion of *James v. Lieb* into the record in overruling the motion for directed verdict. I agree.

Today's decision requires plaintiff to prove with medical certainty, as part of a prima facie case of negligent infliction of

emotional distress, that emotional distress resulting from the perceived death of a child is severe. Such a holding constitutes judicial overkill. The result will prove to be of benefit primarily, if not exclusively, to expert witnesses rather than the judicial system. I hope our society has not reached the point where we need a doctor to tell us what emotional impact results from loss of a child. Perhaps we have. Following a tragic death, we are increasingly seeing reporters for the electronic media inquire of a bereaved family member, "How do you feel?" Perhaps the judicial system is recognizing that nescience. I am reminded of Louis Armstrong's answer to a request to define jazz: "Man, if you gotta ask you'll never know." This is not a case of hard facts making bad law, but, rather, hard law begetting bad results. I would affirm the verdict of the district court jury.

WHITE and SHANAHAN, JJ., join in this dissent.