MICHELE KANT, NOW KNOWN AS MICHELE STROM, APPELLANT,
v. SABAR ALTAYAR, M.D., APPELLEE.
704 N.W.2d 537

Filed October 7, 2005.   No. S-04-864.

Daniel J. Welch, of Welch Law Firm, P.C., for appellant.

Joseph S. Daly and Michael G. Monday, of Sodoro, Daly & Sodoro, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

Michele Kant, now known as Michele Strom, brought this civil action against Sabah Altayar, M.D., in the district court for Douglas County, alleging that he committed a battery upon her. Following a jury trial and verdict in Kant's favor, judgment was entered for Kant in the amount of $37,500. The district court subsequently granted Altayar's motion for new trial, based upon its determination that the jury instructions "failed to properly instruct on actionable emotional distress and the standard that must be met." We conclude that the district court erred in granting the motion for new trial and that the judgment in Kant's favor should be reinstated.

## BACKGROUND

At all relevant times, Kant was a pharmaceutical sales representative who called on physicians, including Altayar, that were located in her assigned territory. Kant first met Altayar in 2000 and made several calls to his office between October 2000 and March 2001 for the purpose of leaving samples and promoting pharmaceutical products.

During the afternoon of March 23, 2001, Kant experienced symptoms of a migraine headache. She made an appointment to see her chiropractor, but before the appointment, she made a sales call to Altayar's office. During her conversation with Altayar, Kant complained of her headache. Altayar offered to treat the condition with two injections, one for nausea and the other for pain. Kant consented to the injections, which Altayar administered. He then instructed Kant to lie down in a darkened patient room. After Altayar left the room, Kant began to feel extremely groggy and sleepy. Altayar returned in approximately 20 minutes

to check on her and told Kant that she should remain there for another 5 to 10 minutes.

The ensuing events were the subject of sharply conflicting trial testimony. Kant testified that when Altayar returned to the room, he began to rub her back and neck and asked if he could kiss her. Kant testified that she pushed away and told him "no" and that he then left the room. Kant testified that when she later left the patient room and walked to the nurses' station, she experienced nausea and thought she might pass out. She testified that Altayar approached her and accompanied her to his personal office, where she sat down near a container which Altayar gave her in case she became ill. According to Kant, Altayar then asked her to stand, he put his hands on her shoulders, then put his arms around her and began to kiss her. Kant testified that she again pushed him back and said "no." At that point, Kant left the building and, after keeping the appointment with her chiropractor, returned home and slept without waking for 15 to 16 hours. The next day, Kant told her fiance and her chiropractor about Altayar's actions and of the fear she had experienced during the incident.

Altayar testified that he did not enter the patient room on either of the two occasions that he checked on Kant following the injections, but, rather, that he spoke to her from an adjacent hallway. Altayar testified that at the time of his second inquiry, Kant stated that she was feeling much better, so he told her that she could go home. He stated that several minutes later, he went to his personal office and found Kant seated there. He testified that he asked her why she was in his office and that she replied that she went in to sit down because she had felt light-headed as she was passing by. Altayar testified that he brought her some water and denied her request to prescribe a pain medication. He testified that he then returned to the nurses' station and that moments later, Kant walked by. According to Altayar, Kant thanked him for his kindness and his time, gave him a hug and a kiss on the cheek, and then left the building, stating that she was going to an appointment with her chiropractor. Altayar denied that he rubbed Kant's neck and back or that he attempted to kiss her.

In her operative amended petition, Kant alleged that as a result of Altayar's actions, she "became ill for two days" and "suffered and continues to suffer from emotional distress." Kant

testified at trial that she suffered emotionally as a result of the incident, although she did not seek medical treatment or counseling. She testified that for about 1½ years after the incident, she had trouble being alone with her male customers in their offices or in their sample rooms because she feared the incident could happen again. She described flashbacks of the incident and her "constant fear" of encountering Altayar or his associate following the incident.

The jury was instructed that before Kant could recover from Altayar on her battery claim, she was required to prove by the greater weight of the evidence that she was battered by Altayar, that the battery proximately resulted in damage to her, and the nature and extent of the damage. With respect to the amount of damages, the jury was instructed that it could consider the "nature and extent of the injury" and the "emotional distress the Plaintiff may have suffered."

In its order granting the motion for new trial, the district court cited our decision in *Sell v. Mary Lanning Memorial Hosp.*, 243 Neb. 266, 498 N.W.2d 522 (1993), and stated that even if it agreed with Kant's argument that she was not required to present medical testimony to establish damages, she nevertheless "failed to meet the second prong, that the emotional distress was so severe that no reasonable person could have been expected to endure it." After the district court denied Kant's motion to reconsider its order granting Altayar's motion for new trial, Kant perfected this timely appeal. We moved the appeal to our docket pursuant to our authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENT OF ERROR

Kant assigns, consolidated and restated, that the district court erred in granting Altayar's motion for new trial.

## STANDARD OF REVIEW

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Nelson v. City of Omaha*, 256 Neb. 303, 589 N.W.2d 522 (1999). The discretion of a trial court in ruling on a motion for new trial is only the power to apply the

statutes and legal principles to all facts of the case; a new trial may be granted only where legal cause exists. *Id.*; *Hartley v. Guthmann*, 248 Neb. 131, 532 N.W.2d 331 (1995); *Wolfe v. Abraham*, 244 Neb. 337, 506 N.W.2d 692 (1993).

## ANALYSIS

It is apparent from the verdict that the jury believed Kant's account of the events of March 23, 2001, and we therefore assume those facts for purposes of our analysis. Kant sought recovery under a theory of battery, an intentional tort which includes physical contact with another without consent or justification. See, *Reavis v. Slominski*, 250 Neb. 711, 551 N.W.2d 528 (1996); *Bergman v. Anderson*, 226 Neb. 333, 411 N.W.2d 336 (1987); Black's Law Dictionary 162 (8th ed. 2004). The victim of a battery may recover compensatory damages, including pain and suffering, determined by the nature of the injury. *Nelson-Holst v. Iverson*, 239 Neb. 911, 479 N.W.2d 759 (1992); *Duncza v. Gottschalk*, 218 Neb. 879, 359 N.W.2d 813 (1984). The same wrongful conduct may support a civil action based on a theory of battery as well as an action based upon the independent tort of intentional infliction of emotional distress. Thus, in *Mindt v. Shavers*, 214 Neb. 786, 337 N.W.2d 97 (1983), we held that where an action for sexual battery was barred under a 1-year statute of limitations, the plaintiff could nevertheless maintain an action for intentional infliction of emotional distress arising from the same facts within the applicable 4-year limitations period.

The elements of the tort of intentional infliction of emotional distress, sometimes referred to as the tort of outrage, are (1) that there has been intentional or reckless conduct, (2) that the conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and is to be regarded as atrocious and utterly intolerable in a civilized community, and (3) that the conduct caused emotional distress so severe that no reasonable person should be expected to endure it. *Gall v. Great Western Sugar Co.*, 219 Neb. 354, 363 N.W.2d 373 (1985). Under this theory of recovery, "outrageous" conduct is actionable "only where the emotional distress has in fact resulted, and where it is severe." Restatement (Second) of Torts § 46, comment *j.* at 77 (1965). According to the Restatement,

[e]motional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises.

*Id.* See, also, *Davis v. Texaco, Inc.*, 210 Neb. 67, 313 N.W.2d 221 (1981) (White, J., concurring). Severe emotional distress is also an element of the tort of negligent infliction of emotional distress. *Hamilton v. Nestor*, 265 Neb. 757, 659 N.W.2d 321 (2003); *Sell v. Mary Lanning Memorial Hosp.*, 243 Neb. 266, 498 N.W.2d 522 (1993). The issue presented by this appeal is whether a person suing on a theory of battery must prove similarly severe emotional distress in order to recover compensatory damages for such an injury. We conclude that the law does not require such proof.

Although we have not previously addressed the issue, other courts and legal authorities recognize a distinction between proof requirements in an action for negligent or intentional infliction of emotional distress and damages for emotional distress sought "where other interests have been invaded, and tort liability has arisen apart from the emotional distress." Restatement, *supra*, comment *b*. at 72.

In rejecting a contention that emotional distress was not shown to be sufficiently severe to be recoverable as damages for breach of a fiduciary duty, the Supreme Court of Vermont noted that the claimant "was only claiming damages in the form of emotional distress. She did not bring a tort claim against anyone for intentional or negligent infliction of emotional distress." *Cooper v. Cooper*, 173 Vt. 1, 14, 783 A.2d 430, 441 (2001). In *A.R.B. v. Elkin*, 98 S.W.3d 99 (Mo. App. 2003), the Missouri Court of Appeals held that while "severe emotional distress" was a required element of proof in a claim for intentional infliction of emotional distress, the requirement did not apply to a claim for assault and battery in which emotional injury was claimed. The court held that a plaintiff was "at least entitled to nominal damages upon a finding that an assault and battery occurred," and could also recover "compensatory damages for bodily pain, humiliation, mental anguish and other injuries that occur as a

necessary and natural consequence of the tortious conduct." *Id.* at 104. In upholding a judgment for emotional distress damages in an assault and battery case, notwithstanding the fact that the plaintiff did not undergo medical or psychological treatment, the Supreme Court of Nevada recognized that "the standard of proof for emotional distress damages arising from assault and battery is not as stringent as the standard of proof requirement for bare claims of intentional or negligent infliction of emotional distress." *Olivero v. Lowe,* 116 Nev. 395, 400, 995 P.2d 1023, 1026 (2000). Similarly, in *Johnson v. Ramsey County,* 424 N.W.2d 800, 804 (Minn. App. 1988), the Minnesota Court of Appeals rejected a contention that damages for emotional distress were recoverable in a battery case only where the emotional injury met the "strict standard for the tort of intentional infliction of emotional distress," noting "[t]he tort of battery is a separate and distinct cause of action from the tort of intentional infliction of emotional distress, and the elements of proof necessary to sustain each claim are entirely different."

In Nebraska, "severe emotional distress" is not an element of the tort of battery, in which "the essence of the plaintiff's grievance consists in the offense to the dignity involved in the unpermitted and intentional invasion of the inviolability of h[er] person and not in any physical harm done to h[er] body." Restatement (Second) Torts § 18, comment *c.* at 31 (1965). Nebraska appellate courts have upheld recovery of damages for emotional distress resulting from intentional torts other than intentional infliction of emotional distress without limitation based upon the degree of severity. See *Duncza v. Gottschalk,* 218 Neb. 879, 359 N.W.2d 813 (1984) (affirming jury award for compensatory damages established in part by plaintiff's own testimony that she suffered embarrassment and humiliation caused by assault); *Bishop v. Bockoven, Inc.,* 199 Neb. 613, 260 N.W.2d 488 (1977) (affirming award where plaintiff's testimony provided only evidence of embarrassment and mental anguish in case of false imprisonment); *Crouter v. Rogers,* 193 Neb. 497, 227 N.W.2d 845 (1975) (determining that once assault is proved, plaintiff's testimony of mental anguish, humiliation, and mental distress experienced as result of assault is sufficient to submit issue to jury); *Sabrina W. v. Willman,* 4 Neb. App. 149, 540

N.W.2d 364 (1995) (finding emotional distress need not be severe to be compensable under claim for invasion of privacy).

Contrary to the reasoning upon which the district court granted Altayar's motion for new trial, Kant was not required to prove *severe* emotional distress in order to recover compensatory damages caused by the battery. Her testimony regarding the emotional impact of the battery, as summarized above, was sufficient to submit this issue to the jury. The instructions given to the jury, when read together and taken as a whole, correctly stated the law, were not misleading, and adequately covered the issues supported by the pleadings and evidence. See *Pribil v. Koinzan*, 266 Neb. 222, 665 N.W.2d 567 (2003). Accordingly, the verdict should not have been disturbed.

## CONCLUSION

For the foregoing reasons, the district court abused its discretion in granting a new trial. We therefore reverse the judgment of the district court and remand the cause with the direction that the district court enter judgment in accordance with the verdict.

REVERSED AND REMANDED WITH DIRECTION.