E.L. PRANGE, Jr., and Marilyn
Prange, Plaintiffs,

v.

Don PRANGE, Gary Prange, Kevin
Prange, and Emerson L. Prange,
Defendants.

Nos. 51539, 51522.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 3, 1987.

Plaintiffs Motion for Rehearing and/or
Transfer Denied Dec. 10, 1987.

Defendants Rehearing Denied
Dec. 10, 1987.

Case Transferred to Supreme Court
Jan. 20, 1988.

Case Retransferred to Court of
Appeals Sept. 1, 1988.

Original Opinion Reinstated
Sept. 13, 1988.

Charles E. Rendlen, Russell John Kruse, Hannibal, for defendants.

Thomas B. Brown, Edina, for plaintiffs.

DOWD, Judge.

All parties appeal following the trial court's distribution and division of the assets of a dissolved family partnership. We affirm in part and reverse and remand in part.

At issue are the assets of and interests in a family owned farming partnership and certain land farmed by the partnership. Plaintiffs E.L. Prange and his wife Marilyn initiated this action by filing suit in November 1984 seeking the partnership be adjudged dissolved as of February 1, 1984, and that the court enter judgment in plaintiffs' favor in the amount of their interest in the partnership as of the date of dissolution with interest. Plaintiffs further requested an award for improvements they made to a house owned by plaintiff E.L.'s father. In the final count of their petition plaintiffs prayed for the rental value of a one-third interest in 430 acres of the land farmed by the partnership.

Defendants are plaintiff E.L.'s father, Emerson Prange, E.L.'s brother, Don Prange, and Don's sons, Gary and Kevin Prange. Defendants counterclaimed alleging that the partnership was dissolved as of March 1, 1984, and requested the court to order the partnership dissolved as of that date. In addition, defendants requested the court to perform an accounting of the assets of the partnership, order a liquidation sale, determine the interests in the partnership and distribute the proceeds accordingly. Defendants also requested damages against plaintiffs for obstruction of the farm operation and destruction of property. Emerson Prange, in the second count of the counterclaim, sought damages against his son E.L. for assault.

The facts leading up to this dispute are as follows. Emerson and Helen Prange, over a period of time, acquired approximately 800 acres of land for farming. Emerson and Helen purchased most of the acreage and inherited the remaining land. At the time of purchase, Emerson and Helen had the names of their three sons E.L., Don, and John placed on the deeds to 430 acres of land. John was approximately six years of age and Don was approximately fourteen when the first parcel of land was acquired by their parents. Emerson and Helen retained the deeds and abstracts in their possession. The deeds were thereafter recorded by Emerson and Helen's attorney but apparently not at their request. Emerson, Helen, Don, and John all testified the sons' names were placed on the deeds only to circumvent probate. The parents were to have an interest in the farm for life. The sons never received rent from the land nor did they pay the taxes on the land. The youngest son John testified he had never even seen the deeds.

In 1956, Emerson formed a partnership, "Emerson Prange and Sons," with his two sons E.L. and Don for the purpose of farming the land. Emerson contributed the capital of $34,188.48 to form the partnership. The partnership was evidenced by a written agreement that did not provide for a termination date. The ownership interests of the partnership were to be a one-half interest to Emerson and one-fourth interests to E.L. and Don. On January 17, 1956, Don and E.L. each executed notes to Emerson in the amount of $8,547.12 to cover their one-fourth interests in the partnerships. Besides certain credits indicated on the reverse sides of the notes, Don and E.L. admitted that they had never paid off these notes.

The partners further agreed at this time that both Don and E.L. would each occupy a house, rent-free, located on Emerson's land. Both Emerson and Don testified the cost of any improvements were to be the

responsibility of the occupier and that all improvements were to belong to Emerson when possession of the premises was returned.

Oral modifications to the partnership agreement were made over time. In 1973, a change was made in the share arrangement of the partnership in that Emerson, E.L., and Don each became one-third owners of the partnership. The increase in Don and E.L.'s interests was possible because of a contribution of a one-sixth interest to the capital account by Emerson in the amount of $21,782.94.

In order to draw social security, Emerson retired from the "Emerson Prange and Sons" partnership as of January 1, 1975. Don and E.L., by an oral agreement, formed a new partnership known as "Prange Brothers." In 1976, distributions were apparently made from the money accounts of the "Emerson Prange and Sons" partnership. Emerson allowed his interest in the physical assets of the "Emerson Prange and Sons" partnership and his land to be used by the "Prange Brothers" partnership in exchange for rent in the amount of one-third of the farm income of the "Prange Brothers" partnership. The partnership and individual tax returns of the parties during this period reflect such an agreement.

In 1981, a new distribution system was instituted. Emerson was to receive one-fourth of the operating profits as rent, Don's sons Kevin and Gary would each receive one-eighth of the operating profit, and Don and E.L. would receive one-fourth shares. This new arrangement applied solely to the distribution of operating profits and did not affect the partnership's capital account. Kevin and Gary testified they at no time acquired an interest in the capital account of the partnership. Don and E.L. continued as the sole partners of the "Prange Brothers" partnership.

In 1983 the Prange family began experiencing family difficulties concerning the farming operations due to disputes between E.L. and Emerson. As a result of these disputes, E.L. intentionally struck his seventy-year-old father on two occasions, once in October 1983 and once in August 1984.

In December 1983, E.L. sent notice to the partnership to cease farming operations on E.L.'s privately owned land by March 1, 1984. On January 30, 1984, E.L. received notice to vacate the house owned by Emerson, which E.L. and his family occupied, by March 1, 1984. On February 21, 1984, without the knowledge of E.L., funds were withdrawn from the partnership account and were distributed between Emerson, Don, E.L., Kevin, and Gary.

The court heard the case in a bifurcated proceeding. With both sides agreeing the partnership was dissolved, in the initial proceeding, the court heard evidence solely to make a determination as to the date of dissolution. The court determined the partnership was dissolved as of March 1, 1984. Neither side appeals from this portion of the trial court's judgment.

In the second stage of the proceeding the court heard evidence on the remaining issues of the case. Thereafter, the court performed an accounting of the assets of the partnership and made a determination as to the ownership interests.

The court awarded E.L. one-half of the money accounts of the partnership with interest less Emerson's 1973 contribution to capital with interest. As to the physical assets of the partnership the court awarded E.L. one-third of their value with interest. The total award to E.L. was in the amount of $315,732.25.

The court found against plaintiffs in their count for rent on 430 acres of the land farmed by the partnership holding plaintiffs did not meet their burden of proving they had a present possessory interest in the land. The court also found against plaintiffs in their count for the value of improvements made to the house owned by Emerson which plaintiffs occupied.

As to defendants' counterclaim, the court found against defendants in their first count for damages against E.L. for destruction of property and obstruction of the farming operations. The court, however, found for Emerson in Count II of the coun-

terclaim for assault and battery and awarded Emerson $3,500 in actual damages.

Both sides appealed from the judgment of the trial court. On this court's own motion the appeals were consolidated.

Our scope of review in this court tried case is governed by *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976), and accordingly the decree or judgment of the trial court will be sustained "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law."

In their first and third points on appeal, defendants challenge findings of fact made by the trial court contending they are not supported by the evidence. As an appellate court, we defer to the trial court on factual issues "because it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record." *In re Adoption of W.B.L.,* 681 S.W.2d 452, 455 (Mo. banc 1984). We "should be reluctant to take over trial court functions involving findings of fact from the record and entry of amended judgments, except under the most compelling circumstances." *In re Marriage of Ward,* 659 S.W.2d 605, 608 (Mo. App.1983).

We do not find such compelling circumstances to exist here. In points one and three, defendants contend eleven paragraphs of the court's findings of fact are unsupported by the evidence. Defendants, however, elaborate only as to why four findings by the court do not have evidentiary support. Specifically, defendants contend paragraphs four, five, thirteen, and fourteen are contradictory findings of fact and are inconsistent with paragraph six of the court's conclusions of law. The remaining challenges to the trial court's findings of fact are improperly included only in the statement of facts portion of defendants' brief. Rule 84.04(c).

Nonetheless, after a review of the record we find the eleven challenged paragraphs of the court's findings of fact are supported by the evidence. Most of the challenged findings relate to the terms of the oral partnership agreements, particularly the ownership interests. One finding concerns the valuation of partnership assets and another involves a finding by the court that the partnership performed work on Don's personal land.

While it is true that the specific agreement of an oral partnership must be proved by clear, cogent, and convincing evidence, *Grissum v. Reesman,* 505 S.W.2d 81, 85 (Mo.1974); *Nesler v. Reed,* 703 S.W. 2d 520, 523 (Mo.App.1985), the clear and convincing standard does not mean there cannot be contrary evidence. *Grissum, supra.* There was clear and convincing evidence to support the trial court's findings of fact as to the terms and ownership interests of the partnership. The court's findings were supported by testimony and documentary evidence in the nature of banking records and income tax returns for the partnership and individual parties.

The trial court's finding that work was performed by the partnership on Don's personal land and the value of that work was supported by the testimony of E.L. which the court found to be credible. Likewise, the trial court's valuation of the capital assets of the partnership was supported by the evidence. Both sides introduced evidence on the value of individual assets. The trial court could have accepted the values offered by either side in reaching its figure for the total value of the capital assets.

As to defendants' specific contention that paragraphs four, five, thirteen, and fourteen of the court's findings of fact are contradictory, we disagree. In paragraph four, the court found the "Prange Brothers" partnership was owned by E.L. and Don. In paragraph five, the court found Emerson allowed his interest in the "Emerson Prange and Sons" partnership to be used by the "Prange Brothers" partnership. The court found, in paragraph thirteen, that the "capital assets" of the "Prange Brothers" partnership were owned by Emerson, E.L., and Don with

each having a one-third share. The court specifically defined the term "capital assets" to include only the physical assets of the partnership. In paragraph fourteen the court found the cash and money of the "Prange Brothers" partnership was owned exclusively by E.L. and Don. Then in paragraph six of its conclusions of law, the court determined Emerson never disposed of his one-third interest in the capital of the partnership.

A review of the court's findings of fact, in their entirety, lead us to conclude these paragraphs are not contradictory and are not inconsistent with the court's determination in paragraph six of its conclusions of law. The trial court narrowly defined the term "capital assets" to include only the physical assets: cattle, hogs, seeds and chemicals, beans, Harvestores, machinery, gas, fuel, and miscellaneous. Excluded from that definition was "cash and money" which the court found to be owned solely by E.L. and Don. Thus the court distinguished and separately distributed the two elements of the capital account, the "capital assets" and "cash and money." The court did not find Emerson had a one-third interest in the partnership but only in the capital assets as narrowly defined by the court. We conclude these findings by the court lead to the compatible end result that Emerson contributed and retained a one-third interest solely in the physical or capital assets.

■ Defendants contend there was no evidence to support the trial court's finding that Emerson had no interest in the money accounts of the "Prange Brothers" partnership. Defendants' own counterclaim pleads that after 1975 there was a distribution to the parties under the original agreement and that thereafter Emerson was to receive one-third of the farming operation proceeds as rent.

The evidence disclosed there were four savings accounts at Gem City Savings and Loan in existence on January 1, 1975 and a checking account at Shelbina Mercantile. Two of the Gem City accounts were solely in Emerson's name. There was a dispute, however, as to the actual ownership of these accounts. It appeared to be the testimony of Emerson's wife Helen that these two accounts belonged to the "Emerson Prange and Sons" partnership. In 1976, following Emerson's retirement, these two accounts were closed by Emerson and a check was issued to Emerson for approximately $47,000. The remaining accounts were put in the name of "Prange Brothers" partnership. The closing of the accounts in Emerson's name and the name changes on the remaining accounts occurred within four days of each other. Moreover, the amount withdrawn by Emerson constituted approximately one-third of the total value of the accounts and thereby reflected the share arrangement prior to Emerson's retirement. There was evidence from which the court could have concluded there was a distribution of the money accounts of the "Emerson Prange and Sons" partnership following Emerson's retirement and thus that Emerson had no interest in the money accounts of the "Prange Brothers" partnership.

Defendants further contend the trial court's conclusion of law, that Emerson did not dispose of his one-third interest in the capital, required the court to apply § 358.260, RSMo 1986, of the Missouri Uniform Partnership Act regarding a *Partner's* interest in the partnership. As discussed, the trial court found Emerson's interest to be solely in the physical assets. The trial court did not find Emerson to be a partner in "Prange Brothers" partnership but rather found the partnership to be owned solely by E.L. and Don. The case law and provision of the partnership act cited by defendants are inapposite. Defendants' first and third points are denied.

■ In their fourth point, defendants contend the trial court erred in determining, in its conclusion of law, that Gary and Kevin received distributions in excess of their entitlement and that the amount overpaid was owing to the partnership's cash account. According to defendants, Gary and Kevin's shares of the farm income should have been calculated before the farm income was reduced by the amount of

rent paid to Emerson. Defendants cite no authority for this accounting procedure.

The evidence was and the trial court found E.L. and Don were the sole owners of "Prange Brothers" partnership. The partnership's tax returns listed rent payments to Emerson as a partnership expense. The agreement was Kevin and Gary were to get one-eighth of the partnership's operating profit. The operating profit was properly determined by subtracting the expenses of the partnership. The trial court's method of determining Gary and Kevin's shares of the farm income is supported by the evidence. Point denied.

In their fifth point, defendants contend the trial court erred in allowing into evidence the testimony of plaintiffs' expert witness concerning the value of the partnership's machinery. According to defendants, there was insufficient factual basis to support the witness' testimony.

■ The admission or exclusion of expert opinion testimony is a matter largely within the discretion of the trial court and will not be disturbed on appeal unless it plainly appears the trial court abused its discretion. *Superior Ice & Coal Co. v. Belger Cartage Service, Inc.*, 337 S.W.2d 897, 906 (Mo.1960); *Rose v. Fague–Prouhet*, 701 S.W.2d 509, 511 (Mo.App.1985). We find no abuse of the court's discretion.

Plaintiffs' expert had engaged in the farm equipment business for approximately eighteen years. At trial, he testified as to his opinion of the value of the machinery on March 1, 1984, the date of dissolution. While it is true the witness did not inspect the machinery as of the date of dissolution, he had initially sold to the Prange family most of the equipment he appraised and had inspected some of the machinery in the Fall of 1983. In any event, the witness' testimony was based on the assumption that the machinery was in good working condition and plaintiffs followed up with subsequent evidence that the machinery was in good operating condition at the time of dissolution. Point denied.

■ Defendants in their sixth point contend the trial court erred in failing to include in its findings of fact a specific finding as to the value of the feed and livestock on the date of dissolution. Defendants further contend the court erred in its valuation of the feed and livestock in that the court failed to find the fair market value of the items at dissolution.

In its findings of fact, the trial court made a finding as to the total value of the physical assets of the partnership, which included the feed and livestock, but did not separately assess the value of these items as requested by the parties. Failure to make specific findings of fact upon request of a party, however, is not reversible error. *Shepherd v. City of Wentzville*, 645 S.W.2d 130, 132 (Mo.App.1982).

■ Defendants further contend the trial court did not value the feed and livestock as of the date of dissolution in that the court relied on plaintiffs' appraisals which were made thirty days prior to dissolution. Plaintiffs' valuations of the feed and livestock, however, were based on the date of dissolution. Plaintiffs' initial appraisals were valuations of the feed and livestock one month prior to the date the court determined to be the date of dissolution. At trial, however, E.L. adjusted these values for the changes that occurred during the one month period and gave his opinion as to the fair market value of these assets as of the date of dissolution. E.L. testified that the value of the livestock and feed on hand on February 1, 1984, would be equivalent to their value on March 1, 1984, the date of dissolution, because the decrease in the feed supply due to consumption during the thirty day period would be offset by the increase in the value of the fatted livestock. Thus, even if the trial court relied on plaintiffs' appraisal of the feed and livestock the valuations were based on the fair market value of the assets as of the date of dissolution. Point denied.

■ In their seventh point, defendants contend the trial court erred in awarding interest to plaintiffs under § 358.420, RSMo 1986, because defendants contend that the statutory authorization of interest

does not apply where plaintiff dissolved the partnership by his own will and the dissolution was not due to any wrongdoing by defendants. We disagree with defendants' interpretation of § 358.420.

In Counts I and II of their petition, plaintiffs requested that the court determine the date as of which the partnership was dissolved and that the court award plaintiffs their share of the partnership as of the date of dissolution with interest. Within these two counts plaintiffs averred that Don, Gary, and Kevin continued the partnership business without settling the accounts due plaintiffs, except for a distribution of $50.468.37 that plaintiffs received from the partnership's money market and savings accounts. Within its judgment the court ruled in favor of plaintiffs on Counts I and II and awarded nine percent interest on the value of plaintiffs' share of the partnership assets still owing as authorized by § 358.420.

Section 358.420 provides for interest to a retiring partner or the representative of a deceased partner where the business is continued following dissolution without settlement of the partnership accounts. Upon dissolution of a partnership, the partnership is not terminated but continues until the winding up of the partnership affairs is completed. § 358.300, RSMo 1986. "Winding up" involves the administration of the partnership assets in order to terminate the business and discharge the obligations of the partnership to its members. *Smith v. Kennebeck*, 502 S.W.2d 290, 293 (Mo.1973).

Following dissolution a retiring partner has an election. He may either require liquidation of the partnership and receive the value of his interest in the partnership or he may allow the business to continue and claim as a creditor the value of his interest at dissolution. *Turner v. Kaplan*, 602 S.W.2d 460, 464 (Mo. App.1980). If the retiring partner allows the business to continue, he has the option to receive either the profits of the continuing business attributable to the use of his share of the partnership assets or to collect interest on his share of the partnership assets from the date of dissolution. § 358.420, RSMo 1986.

Section 358.420 applies where the partnership business is continued whether or not it is the will of the retiring partner to dissolve the partnership or whether or not the dissolution was due to any wrongdoing by the continuing partners. Section 358.-420 provides for interest where the business is continued under any of the conditions set forth in the first six subsections of § 358.410, RSMo 1986, or subdivision (2) of subsection 2 of § 358.380, RSMo 1986. These statutory subsections include the factual situations where the retiring partner seeks dissolution and where the dissolution was not caused by any wrongdoing on the part of the continuing partners. On point with the factual situation here is § 358.410.3 which, in conjunction with § 358.420, provides for interest where the dissolved partnership is continued with the consent of the retired partner but without any assignment of the retired partner's right in the partnership property.

By defendants' own admissions the business of the partnership was continued. The new partnership, composed of Don and his sons, continued to farm the land. In excess of a "winding up," Don testified that following dissolution on March 1, 1984, the new partnership did not merely harvest the existing crops of the "Prange Brothers" partnership but also conducted the Fall 1984 plowing using the "Prange Brothers" partnership machinery, fuel, and fertilizer. Section 358.420, in conjunction with § 358.410.3, authorized the award of interest. Plaintiffs at least impliedly consented to the continuation of the business until they brought this action in November 1984 seeking to have their interest in the partnership determined.

Defendants further contend that interest should not have been awarded as defendants filed pre-trial motions to liquidate the partnership assets. We fail to follow defendants' reasoning as to why interest is barred by the filing of these pre-trial motions. The motions were filed over nine months after dissolution. At the motion hearing plaintiffs did not object to

selling the assets. The trial court found defendants' motions to be moot in that the parties agreed at the hearing that the decision whether to sell the assets would be made by defendants. Defendants had continued to use the partnership assets following dissolution in the continuation of the business. If defendants subsequently did sell the partnership assets, they did not offer plaintiffs the value of their share. We find no error in the trial court's award of interest.

■ In their second point defendants contend the trial court erred in failing to allow Emerson recoupment of his contribution to the original partnership in 1956 with interest. We find defendants' contention compelling and reverse on this issue.

The evidence was and the trial court found that in 1956 Emerson contributed the initial capital to the "Emerson Prange and Sons" partnership in the amount of $34,-188.48. Don and E.L. paid for their one-fourth interests in the capital by executing promissory notes to their parents. These notes dated January 17, 1956, were each in the amount of $8,547.12.

E.L. admitted, however, that these notes were never satisfied. The note executed by E.L. did show, on its reverse side, that E.L. had made a payment of $1,062.20 on the note on January 15, 1960. The evidence was this was a payment on interest. Emerson conceded in his testimony that the note showed this credit. With the possible exception of that payment, E.L. admitted that he made no further payment on the note.

Nonetheless, the trial court did not deduct Emerson's capital contribution from the value of E.L.'s partnership interest. In contrast the court did reduce E.L.'s judgment by the amount of Emerson's 1973 capital contribution to the partnership which allowed for an increase in Don and E.L.'s partnership shares from one-fourth interests to one-third interests. No explanation was given by the trial court as to why the 1956 contribution to capital was not likewise deducted from E.L.'s judgment. There was no finding of a gift by

the trial court and the evidence did not support such a finding.

In the case of *Hahn v. Hahn,* 488 S.W.2d 203 (Mo.App.1972), recoupment was allowed as to the value of an unpaid promissory note executed by a partner in consideration for his one-third interest in the partnership. The note was executed at the commencement of the partnership in January 1954. The partnership was dissolved in 1965. The defendant partner had not requested payment on the note during the eleven years of the partnership. Plaintiff partner brought an action for an accounting of the partnership assets and requested a judgment for one-third of the value of the partnership. The court in *Hahn* determined that plaintiff's judgment was properly reduced by the value of the promissory note as the note was a proper item of recoupment. *Id.* at 206.

We likewise conclude that the note executed by E.L. is a proper item of recoupment and should be deducted from plaintiffs' judgment. Plaintiffs contend recoupment of this amount is barred by the Statute of Limitations, § 516.120, RSMo 1986. It is defendants' contention that a cause of action for an accounting by a partner accrues at dissolution, § 358.420, RSMo 1986, that "Emerson Prange and Sons" partnership dissolved on January 1, 1975, and that according to § 516.120 defendants had five years from that date to seek recoupment and that such time period has expired.

Without deciding the applicability of § 516.120 as the appropriate statute of limitations we note that the sole purpose of the statute of limitations is to bar actions and not to deny matters of defense whether equitable or legal. *McFarland v. Braddy,* 560 S.W.2d 259, 264 (Mo.App.1977). This is so even where, as here, a prayer for affirmative relief is included. *Id.*

In their counterclaim, defendants requested that the court perform an accounting of the interests of the partners and that the proceeds be distributed to those entitled thereto. "A 'counterclaim' is a counterdemand existing in favor of a defendant against a plaintiff and includes set-off and recoupment...." *Schroeder v. Prince*

*Charles, Inc.*, 427 S.W.2d 414, 419 (Mo. 1968). The defense of recoupment is available only to reduce or satisfy a plaintiff's claim and does not permit an affirmative judgment.

■ Emerson, as a creditor of the partnership, was entitled to recoupment in the amount of E.L.'s unpaid promissory note. While Emerson may have been barred from seeking affirmative relief for reimbursement of his capital contribution, he was entitled to the defense of recoupment and to have plaintiffs' judgment reduced by the value of the note.

■ The note in question was dated January 17, 1956 and was in the amount of $8,547.12. The note provided for interest but the rate of interest was left blank. The due date was likewise left blank.

According to § 400.3–118(d), RSMo 1986, of Missouri's Uniform Commercial Code, "[u]nless otherwise specified a provision for interest means interest at the judgment rate at the place of payment from the date of the instrument, or if it is undated from the date of issue." Missouri's judgment rate was six percent when the note was executed. § 408.020, RSMo 1978. The judgment rate was increased to nine percent effective September 28, 1979. § 408.020, RSMo 1986.

As opposed to where interest is based on damages and contrary to post-judgment interest, "[w]here a contract provides for the payment of interest but specifies no particular rate, the legal rate at the date of contract will attach thereto as a part thereof ... and a subsequent statute changing the legal rate will not change the rate payable on such obligation." 47 C.J.S. *Interest & Usury*, § 36b p. 89 (1982); 45 Am.Jur.2d *Interest & Usury* § 10 p. 24 (1969).

Thus, Emerson is entitled to have plaintiffs' judgment reduced by $8,547.12, the amount of the note, plus six percent interest from January 17, 1956 to February 3, 1986, less the payment made of $1,062.20. We reverse on this issue and remand to the trial court with directions to calculate the interest and reduce plaintiffs' judgment in accordance with this opinion.

■ In their cross appeal, plaintiffs allege four points of error. In their first point plaintiffs contend the trial court erred in finding in favor of Emerson and awarding Emerson damages in the second count of his counterclaim for assault and battery. Plaintiffs contend there was no evidence of medical expense as a result of the alleged injuries and that there was no evidence establishing proximate cause between the strikings and the conditions for which he was hospitalized.

The trial court found E.L. intentionally struck Emerson, his seventy year old father, and caused Emerson bodily harm. The court awarded Emerson damages in the amount of $3,500.

Emerson Prange testified that E.L. had struck him on two occasions. In October 1983 the two had engaged in an argument. Emerson was seated in a chair. E.L. struck Emerson in the face, knocking a tooth loose. Emerson fell backwards in the chair and E.L. began kicking Emerson in the groin and legs. Seven months later Emerson was hospitalized.

The second incident occurred in August 1984. Emerson was in the driver's seat of a pick-up truck when E.L. tried to wrestle the keys from Emerson. Emerson's arm was cut on the gear shift. The local sheriff testified he was called to the Prange farm during this incident and Emerson's arm was bleeding. Emerson introduced photographs of his arm taken within a month after the injury.

Emerson also sought to introduce evidence of his medical bills from the incidents. Plaintiffs filed a motion in limine seeking to have evidence of Emerson's medical bills excluded on grounds plaintiffs had requested production of such records and defendants did not make the records available to plaintiffs until the morning of trial. The court reserved ruling on the motion at trial but in its conclusions of law sustained plaintiffs' motion, thereby excluding evidence of the medical bills.

The evidence supported the trial court's finding that E.L. intentionally struck Emerson. As to the award of damages, the matter of fixing damages rests in the sound discretion of the trier of fact and requires the weighing of evidence on that fact issue. *Combs v. Combs,* 284 S.W.2d 423, 426 (Mo.1955). Fixing damages is particularly a matter for the trier of fact in the case of assault and battery where additional discretionary elements are considered. *Mansfield v. Smithie,* 615 S.W.2d 649, 655 (Mo.App.1981).

Regardless of whether the conditions for which Emerson later sought treatment and was hospitalized were due to the assaults by E.L., and in spite of the fact that the medical records of that subsequent treatment were excluded, we conclude the trial court's award of damages was reasonable compensation for pain and suffering, mental anguish, and humiliation.

 There is no fixed measure or standard available to the trier of fact in determining the measure of damages for pain and suffering. *Graeff v. Baptist Temple of Springfield,* 576 S.W.2d 291, 302 (Mo. banc 1978). The measure of damages is simply that which is fair and reasonable. *Id.* at 301. In a case involving assault and battery, the additional factors of mental anguish and humiliation are proper elements of general damages to be considered as they are the necessary and natural consequences of an assault. *Mansfield, supra,* at 655; *Hall v. Martindale,* 166 S.W.2d 594, 603 (Mo.App.1942). These additional factors may be inferred from the character of the injuries even though not pleaded and without specific proof. *Mansfield, supra.*

We conclude the trial court's award of damages is fair and reasonable. Point denied.

In their second point, plaintiffs contend the trial court erred in holding against plaintiffs on Count IV of their petition for rent on a one-third interest in 430 acres of the land farmed by the partnership.

The evidence was that Emerson and Helen Prange were to have the beneficial interest of the land during their lifetimes. Emerson and Helen had purchased most of the 430 acres and the remaining acreage was acquired by Helen through inheritance. At the time of purchase Emerson and Helen placed the names of their sons, even though they were young at the time, on the deeds to avoid probate. All the while Emerson and Helen retained possession of the deeds and abstracts. Emerson and Helen testified they reserved a life estate in the land. Likewise, two of the three sons who were grantees under the deeds, Don and John, testified their parents reserved a life estate in the land. Further, the evidence showed the sons did not individually pay taxes on the land. Moreover, the sons never received rents from the land, including the youngest son John who operated a veterinary practice and did not participate in the farming operations and thus did not benefit from the use of the land. Emerson, on the other hand, did receive rents from the land.

The trial court concluded it could not declare a resulting trust or life estate in favor of Emerson and Helen as John the youngest son and grantee under the deeds was not joined as a party to the action. The court further held, however, that plaintiffs did not meet their burden of proving they have a present possessory interest in the land to entitle them to rents.

 A resulting trust is one implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and surround the transaction out of which it arises. *Davis v. Roberts,* 365 Mo. 1195, 295 S.W.2d 152, 156 (banc 1956). Trusts which "arise or result by the implication or construction of law" do not have to be in writing. § 456.010.2, RSMo 1986. The implication of a resulting trust must arise against the presumption that the holder of legal title is the owner of the beneficial interest in the land. *Haas v. Haas,* 669 S.W.2d 592, 595 (Mo.App.1984). The proof to establish a resulting trust must be clear, cogent and convincing. *Ellis v. Williams,* 312 S.W.2d 97, 102 (Mo. 1958).

 The general rule is that a presumption of a "purchase money resulting trust" arises where one pays the purchase price for land but legal title is conveyed to another. *Warford v. Smoot*, 361 Mo. 879, 237 S.W.2d 184, 186 (1951). The presumption is based on the inference that one who supplies the consideration intends the purchase to be for his own benefit, the conveyance in the name of another being only a matter of convenience. Likewise where it is shown "the payor intended that he should have the beneficial interest but that his interest should terminate upon the happening of a designated event, the transferee upon the happening of the event can hold the property free of trust." Restatement (Second) of Trusts § 443 comment c (1959).

 Where, however, as here, a parent pays for property that is conveyed to his children, an inference or presumption of gift is raised and the burden is on the parent to prove by clear and convincing evidence that a gift was not intended. *Warford, supra,* 237 S.W.2d at 186–87. Parol evidence is admissible to rebut the presumption of gift and to establish a resulting trust. Restatement (Second) of Trusts § 443 comment a (1959); *see also, Warford, supra,* at 187. The intention to create a trust rather than a gift may be established by the circumstances surrounding the transfer including the testimony of the parties as to their intent at the time of transfer. *Warford, supra,* at 187. The conduct of the parties subsequent to the transfer may also be considered to show the intent of the payor at the time of transfer. *Id.* The fact that the payor collects rents and pays taxes rebuts the inference of gift. *Id.*

 If the evidence is sufficient to overcome the presumption of gift, a resulting trust arises in favor of the parent at the time of delivery of the deed. *Id.* A resulting trust is not dependent on a decree of court for its establishment. G. Bogert, The Law of Trusts and Trustees § 454 p. 642 (1977). A court may later recognize it and enforce it but equity treats it as having been in existence from the time of the conveyance. *Id.*

In *Warford, supra,* our Supreme Court affirmed the judgment of the trial court decreeing title to land to a father by virtue of a resulting trust where the father paid for property in which legal title was conveyed to his daughter. The court agreed that the presumption of gift was overcome by evidence that the father made improvements to the land and paid taxes on the real estate.

 In the case at bar we likewise conclude there was sufficient evidence to overcome the presumption of gift. The payors Emerson and Helen testified they intended to have the beneficial interest of the land for life. Two of the three grantees under the deed also testified Emerson and Helen were to have a life estate in the land. The conduct of the parties subsequent to the transfer also proved Emerson and Helen were to have the beneficial interest in the land for life. Emerson and Helen retained the deeds and abstracts to the land and received rents from the land.

While all the necessary parties to the transaction were not joined to allow the trial court to declare title to the land in Emerson and Helen for life by virtue of a resulting trust, the evidence of a resulting trust was sufficient to overcome the presumption of gift and thus plaintiffs have not proven that they have the present beneficial interest in the land to entitle them to rents. Point denied.

 In the third point of their cross-appeal plaintiffs contend the trial court erred in allowing Emerson recoupment of his 1973 capital contribution to the "Emerson Prange and Sons" partnership. Once again plaintiffs contend that recovery of the capital contribution was barred by the statute of limitations. Plaintiffs further contend that Emerson's capital contribution was a gift.

As discussed previously in point two of defendants' appeal, the statute of limitations is not a bar to recoupment. As to plaintiffs' contention that the capital contribution was a gift, we likewise find that assertion to be without merit.

The burden of proving a gift is on the one claiming a gift. *In re Petersen's Estate*, 295 S.W.2d 144, 150 (Mo.1956). The fact that the alleged donee is the son or other blood relative of the alleged donor does not change this rule. *Id.*

 While a presumption of donative intent may exist from parent to child, *Firestone v. Yoffie*, 494 S.W.2d 394, 400 (Mo. App.1973), the presumption disappears completely upon the production of substantial evidence to the contrary. *In re Petersen's Estate, supra,* at 151. There was such evidence here.

Emerson testified he did not intend to make a gift by the capital contribution but instead intended to seek a return of his capital whenever the partnership would cease. Don, a donee according to plaintiffs' theory, testified his father did not make a gift. Helen Prange, wife of Emerson, likewise testified there was no gift. The business relationship existing between the parties was also evidence contrary to a gift.

There was substantial evidence to dispel any presumption of gift because of the family relationship between the alleged donor and donee. The trial court did not err in allowing Emerson recoupment of his 1973 contribution to capital. Point denied.

 In their final point plaintiffs contend that under the doctrine of unjust enrichment they are entitled to the value of improvements they made to the house owned by Emerson. We find plaintiffs' contention without merit. The trial court found the existence of an agreement between Emerson, E.L., and Don that E.L. and Don would each occupy a house located on Emerson's land rent free but that Don and E.L. would be responsible for the expense of any improvements they chose to make and that any such improvements would belong to Emerson when possession was relinquished. The court's finding was supported by the evidence. Point denied.

We affirm as to all counts of defendants' appeal except for point two and reverse and remand ordering the trial court to determine the amount of recoupment to re-flect Emerson's 1956 contribution to capital and to reduce plaintiffs' judgment accordingly. As to plaintiffs' cross-appeal we affirm.

The judgment is affirmed in part and reversed and remanded in part.

STEPHAN, P.J., and PUDLOWSKI, J., concur.