In the Matter of the ESTATE OF Orvil WHITEHEAD, deceased.

Carolyn Vienhage LITTLE, Personal Representative, Plaintiff–Respondent,

v.

Lora Mae FUGATE, Defendant–Appellant,

and

Orvil Ray Whitehead, Defendant–Appellant.

Nos. 19239, 19243.

Missouri Court of Appeals, Southern District, Division Two.

Jan. 25, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 21, 1995.

Application to Transfer Denied April 25, 1995.

Steven E. Marsh, Hulston, Jones, Gammon & Marsh, Springfield, for defendant-appellant Whitehead.

Patricia J. Shilling, Metzger & Shilling, Ozark, for defendant-appellant Fugate.

Kay S. Graff, Springfield, for plaintiff-respondent.

PREWITT, Judge.

The personal representative of the estate of Orvil Whitehead, deceased, brought this action contending that defendants were individually indebted to the estate for loans the decedent made to them during his lifetime. Following nonjury trial, judgment was entered against both defendants, finding defendant Whitehead indebted to the estate for $66,276.63, and defendant Fugate for $135,817.78. Each defendant appeals. The appeals were consolidated.

Review in this nonjury matter is under Rule 73.01(c). As that rule has been interpreted, this court is to affirm the judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Thurmond v. Moxley*, 879 S.W.2d 709, 711 (Mo.App.1994).

Due regard is given by an appellate court to the trial court's determination on the credibility of witnesses. Rule 73.01(c)(2). "The trial judge is in a better position than this court to determine the credibility of the parties, their sincerity, character and other trial intangibles which may not be shown by the record." *Ross Farms, Inc. v. Moore*, 873 S.W.2d 308, 309 (Mo.App.1994).

Orvil Whitehead, the decedent, died on January 9, 1992. He was single at the time of his death, his wife having predeceased him. Mr. Whitehead's will, duly admitted for probate, provided if he survived his wife his estate be divided equally between his daughter, defendant Lora Mae Fugate, and his son, defendant Orvil Ray Whitehead. The transfers of money in question were made by checks written on a joint account upon which decedent and defendants had check-writing authority. The funds in the account came from decedent and his wife. No promissory notes were signed. The only written evidence of the transfers was checks and check stubs. There was no evidence as to when, if the transfers were loans, they were to be repaid.

The appeal of defendant Lora Mae Fugate presents three points relied on. Her first point contends that the trial court erred "in concluding that any advancements made ... should be taken into account in balancing out the will evenly ... in that the doctrine of advancements is applicable only in the event of intestacy." The trial court did not find that the money which defendants received from the decedent were advancements which are to be counted against the share of an estate under § 474.090, RSMo1986. The court found that the transfers were loans. As the point is premised upon a finding not made, it has no merit.

Defendant Fugate's second point asserts that the trial court erred in the amount assessed against her because "many of the alleged debts were barred by the appropriate statute of limitations, laches, estoppel, release and waiver". The only authority cited under this point pertains to § 516.120, RSMo1986, which Respondent agrees is the applicable statute of limitation. No authority is cited, nor does Fugate discuss in the argument portion of her brief that "laches, estoppel, release and waiver" bar all or part of the claim. Therefore, the latter contentions are

abandoned. *Emery v. Emery,* 833 S.W.2d 453, 454 (Mo.App.1992).

■ Remaining under this point is Fugate's contention that § 516.120 bars portions of the amount assessed against her. In *Duncan v. Estate of Booker,* 816 S.W.2d 705 (Mo.App.1991) this district held that § 516.120 barred a claim against an estate because the debt was not in writing and more than five years had elapsed since it was incurred.

Respondent's personal representative cites *Taylor v. Farmers Bank of Chariton County,* 135 S.W.2d 1108 (Mo.App.1940) for her contention that a cause accrues at the time the lender demands payment. However, in *Taylor* there was a contingency before payment was due. There is no evidence of any contingencies here. The personal representative also argues that there was a "continuous borrowings" citing *Minor v. Lillard,* 289 S.W.2d 1 (Mo.1956) and *Terry v. Eikenbary,* 853 S.W.2d 470 (Mo.App.1993). Those cases involve services rendered, indicating that the statute of limitations may not run until the date of the last work performed. Here each transfer of money was complete when made and there is some indication in the record that many were made for specific needs as they occurred.

The obligations here were akin to demand notes. Such notes are payable on the date of execution and no demand is necessary to start the statute of limitations running. *Jameson v. Jameson,* 72 Mo. 640, 642 (1880); 12 Am.Jur.2d, *Bills & Notes,* § 1048, p. 61 (1964). See also *Centerre Bank of Kansas City v. Distributors, Inc.,* 705 S.W.2d 42, 47 (Mo.App.1985).

We conclude that the rationale of *Duncan* applies and that there is merit to this point. According to an exhibit presented by respondent, twelve transfers to defendant Fugate, totaling, with credits $62,740.00, are barred by § 516.120. The court's determination that she is indebted to the estate for $135,817.78 should be reduced by that figure, resulting in a finding that she was indebted to the estate for $73,077.78.

Defendant Fugate's third point and Defendant Whitehead's singular point assert that the transfers were presumably gifts and that Respondent failed to meet a clear and convincing evidentiary standard to rebut the presumption. To support their claims that a transfer from parent to child is presumed a gift, each defendant cites *Jones v. Jones,* 201 S.W. 557 (Mo.App.1918) and *Firestone v. Yoffie,* 494 S.W.2d 394 (Mo.App.1973), dealing with stock transfers to a child. Obviously stock transfers are much different than the transfer of money as it would be unusual for a stock transfer to be a "loan". Normally there would be no reason to transfer stock unless it was a permanent transfer.

*In re Diehl's Estate,* 239 S.W.2d 523, 526 (Mo.App.1951) states that the "burden of proof rests upon the appellants to prove that the checks which they received from their father were gifts rather than loans." Similarly, *In re Petersen's Estate,* 295 S.W.2d 144, 150 (Mo.1956), involving a loan, states that the defendant had the burden to prove the gift "and the fact that he was a son or other blood relative of the alleged donor does not change this rule." The court also noted there "that where a gift is not asserted until after a donor's death, it is viewed with some suspicion, and the requirement of clear and convincing proof to establish it is particularly applicable."

■ However, it is not necessary for us to decide whether there is a presumption of a gift to a child in the transfer of money. If there is such a presumption it "disappears completely upon the production of substantial evidence to the contrary." *Prange v. Prange,* 755 S.W.2d 581, 594 (Mo.App.1987). Here there was substantial evidence showing that loans were intended and there was such indication in writing on some of the documents related to the transfers.

The decedent filed no federal gift tax returns and the parties appear to agree that if the transfers were gifts, at least in some years such returns should have been filed. There was oral testimony that decedent considered that defendant Fugate had been loaned and owed the decedent around $120,000.00. Earlier decedent had told another person that he had loaned Fugate either $76,000.00 or $86,000.00. A witness testified

**132**

that decedent said Fugate had borrowed about $86,000.00 from him.

Defendant Whitehead said he and defendant Fugate were loaned money by their parents frequently and did not sign promissory notes for the loans. He said his parents kept a book showing the loans and that pages from the book were missing after his mother's death. He said he and Fugate met with their father at a nursing home where his father mentioned that Fugate owed him $90,-000.00 and she "openly admitted one hundred and ten-or-so thousand that she owed him." Defendant Whitehead also testified that Fugate acknowledged in a telephone conversation that she owed their father over $150,-000.00. Fugate testified contrary but, as earlier mentioned, credibility of witnesses is primarily a matter for the trial court. Point three of defendant Fugate is denied. Defendant Whitehead's point is denied.

The cause is reversed and remanded with directions that the trial court amend the judgment to reflect this court's determination that defendant Fugate is indebted to the estate for $73,077.78. In all other respects the judgment is affirmed.

GARRISON, P.J., and CROW, J., concur.