**A.R.B. and A.M.B., Appellants,**

v.

**Howard ELKIN, Respondent.**

**No. WD 60674.**

Missouri Court of Appeals,
Western District.

Feb. 28, 2003.

Christopher Schappe, Jefferson City, MO, for appellant.

Michael P. Riley, Jefferson City, MO, for respondent.

Before ELLIS, C.J., HOWARD and HARDWICK, JJ.

LISA WHITE HARDWICK, Judge.

This appeal arises from a civil judgment ordering Howard Elkin to pay nominal damages of $100 on an assault and battery claim that he sexually abused his minor son and daughter, A.M.B. and A.R.B. The children, as Appellants, contend the trial court erroneously applied the law in determining the damages award. We reverse and remand.

## Factual and Procedural Background

On March 10, 1999, minors A.M.B. and A.R.B. filed a Petition for Damages [1] against their father, Howard Elkin, alleging two counts of assault and battery. Count I alleged that Elkin physically struck and abused his son at the age of eleven by touching A.M.B.'s genitals in a sexually suggestive manner and similarly directing A.M.B. to touch Elkin's genitals. Count II alleged that Elkin sexually abused his daughter at the age of seven by exposing his genitals and masturbating in front of A.R.B. The petition alleged both children suffered emotional distress and sought compensatory and punitive damages.

The trial court struck Elkin's responsive pleadings after he failed to respond to Plaintiffs' Request for Admissions. By virtue of his non-responsiveness, Elkin admitted the following conduct with regard to his son, A.M.B., as set forth in the Request for Admissions:

1. On or about February 4, 1996, Defendant struck Plaintiff A.M.B. and knocked him down a flight of stairs.

2. Defendant physically struck Plaintiff A.M.B. on numerous occasions prior to February 6, 1996.

3. The act of Defendant described in paragraphs 1 and 2 were done with the intent of causing harmful contact with Plaintiff A.M.B. and did in fact result in harmful contact.

4. Defendant, on numerous occasions, exposed his genitals to Plaintiff A.M.B.

5. Defendant, on numerous occasions, touched the genitals of Plaintiff A.M.B. in a sexually suggestive manner.

6. Defendant, on numerous occasions, directed Plaintiff A.M.B. to touch his genital area in a sexually suggestive manner.

7. The acts of Defendant described in paragraphs 1 through 6 were done with the intent of causing either offensive contact or the apprehension of offensive contact with Plaintiff A.M.B., and did in fact result in either offensive contact or the apprehension of offensive contact.

8. The above-described acts of Defendant were outrageous because of Defendant's evil motive or reckless indifference to the rights of Plaintiff A.M.B.

9. As a result of the intentional acts of Defendant as described in paragraphs 1 through 8, Plaintiff A.M.B. has suffered emotional trauma, anxiety, embarrassment and humiliation that has necessitated Plaintiff undergo counseling for treatment of same.

Elkin also admitted the following conduct with regard his daughter, A.R.B., as set forth in the Request for Admissions:

1. The lawsuit was filed on behalf of the children by their mother and "next friend," Diane Bishop.

10. On or before February 6, 1996, Defendant exposed his genitals to Plaintiff A.R.B. Defendant told Plaintiff A.R.B. that, "this is how a man looks when you get bigger."

11. Between February 6, 1996 and July 23, 1996, Defendant exposed his genitals to Plaintiff A.R.B. while he was exercising visitation privileges with the Plaintiff.

12. Between February 6, 1996 and July 23, 1996, Defendant was exercising visitation privileges with Plaintiff A.R.B. when he called her into his bedroom. Defendant was lying naked on his bed with his genitals exposed to Plaintiff A.R.B. Defendant instructed Plaintiff A.R.B. to look into his hand, which was filled with semen. Defendant told Plaintiff A.R.B., "this is what comes out of you when you are healthy."

13. Between February 6, 1996 and July 23, 1996, Defendant rubbed semen on the body of Plaintiff A.R.B.

14. Between February 6, 1996 and July 23, 1996, Defendant masturbated in front of Plaintiff A.R.B.

15. Between February 6, 1996 and July 23, 1996, Defendant directed Plaintiff A.R.B. to remove her underpants while he masturbated in front of Plaintiff A.R.B.

16. Between February 6, 1996 and July 23, 1996, Defendant forced daughter to view the testicles of a bull, made comments comparing them to his own genitalia and asked Plaintiff A.R.B. if he should show his genitals to her again.

17. The acts of Defendant as described in paragraphs 10 through 16 were done with intent of causing either offensive contact or the apprehension of offensive contact with Plaintiff A.R.B., and did in fact result in either offensive contact or the apprehension of offensive contact.

18. The acts of Defendant as described in paragraphs 10 through 17 were outrageous because of Defendant's evil motive or reckless indifference to the rights of Plaintiff A.R.B.

19. As a result of the intentional acts of Defendant as described in paragraphs 10 through 17, Plaintiff A.R.B. suffered emotional trauma, anxiety, embarrassment and humiliation that has necessitated Plaintiff undergo counseling for treatment of the same.

Liability was deemed admitted: thus, the court held a bench trial solely on the issue of damages. Elkin's trial counsel objected when Plaintiffs' counsel attempted to introduce evidence of invoices related to the children's counseling sessions. The court sustained the objection because the invoices were not previously produced in response to Elkin's discovery requests.

By the time of trial, A.M.B. was seventeen years old and A.R.B. was thirteen. Both children and their mother testified at trial.

The son, A.M.B., testified that he was "scared" and wanted to run to his Mother when Elkin hit him. A.M.B. would "fake run away" and hide in the car or someplace nearby because he was afraid. He felt it was a "weird situation" and did not understand what was going on when his father exposed himself. When Elkin touched his son's genitals, A.M.B. was "scared" because he didn't know what "that was about. [He] wasn't sure what was going on ... [or] what was going to happen."

After Elkin was criminally prosecuted

for the abuse,[2] A.M.B. had his name legally changed because he was embarrassed and didn't want any connection with his father. He wanted to "forget about everything to do with that, move on, to make it feel like it was just a dream or something." At the time of trial, A.M.B. kept a gun under his bed and near his television because he feared his father would break in. The gun made him feel safer.

The daughter, A.R.B., testified that she was "scared" when Elkin exposed himself to her because she "didn't know what else he was going to do." She also "felt sad" because she "knew he was not supposed to being doing it." When Elkin called her into his bedroom and was lying on the bed naked, she was even more scared because "it kept going on, and ... mad because I thought I couldn't do anything about it."

Even after the children and Mother moved away from Elkin, A.R.B. slept with the lights on and made sure the doors were locked because she was afraid of her father. She sought help from her third grade teacher, her best friend, and professional counselors. A.R.B. was embarrassed and humiliated by Elkin's conduct.

Mother testified that the children were more "clingy" during the time of abuse and didn't want her to go anywhere without them. They also wanted their friends to come over to their house rather than going out. Elkin remained with the family for a brief time after Mother learned of the abuse. Mother observed A.R.B. being fearful of Elkin and A.M.B. exhibiting anger and hatred toward him. Mother and the children attended therapeutic counseling from the time the Division of Family Services was contacted in 1996 until sometime early in 1999.

After Mother divorced Elkin and remarried, it took six to eight months before A.R.B. would speak to her stepfather. A.R.B. was unwilling to trust him or be alone with him because she was afraid he would hurt her. Mother testified that even at the time of the trial, the children would still "look over their shoulder" and make plans about how they would get away if they encountered Elkin.

Following trial, the court entered judgment against Elkin, awarding $100 in "nominal damages" to the son, A.M.B., and no damage recovery to the daughter, A.R.B. The judgment included the following findings:

The Court on further consideration finds the acts committed by the Defendant were intentional and harmful acts. His children should not have been forced to endure the same.

As to A.R.B., these acts had no physical injury. They were purely emotional claims. As such, under *Hayes v. Dunn*, 709 S.W.2d 164 (Mo.App. E.D.1986) decision, as no medical evidence was accepted by the Court, there can be no recovery. Claim denied.

As to A.M.B., as there was physical injury, combined with the claim for emotional injury, the Court finds the issue for said Plaintiff and against the Defendant and with no evidence of value of said injuries, assesses nominal damages of $100.00, costs to Defendant.

A.M.B. and A.R.B. appeal the trial court's determination of damages.

### Standard of Review

 In this court-tried case, we must affirm the judgment unless it is unsupported by substantial evidence, is against the

---

**2.** Howard Elkin was convicted on criminal charges of sexually abusing his children and served a three-year prison sentence.

weight of the evidence, or erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo.banc 1976). Where the facts are undisputed, we consider only whether the trial court drew the proper legal conclusions from the stipulated facts. *United Servs. Auto. Ass'n Cas. Ins. Co. v. Sorrells*, 910 S.W.2d 774, 777 (Mo.App. E.D.1995).

## Compensatory Damages

■■■ Appellants contend the trial court erroneously determined that A.R.B. was not entitled to compensatory damages because she failed to produce medical evidence of her emotional injuries. We agree. The court misapplied *Hayes v. Dunn*, 709 S.W.2d 164 (Mo.App. E.D. 1986), in denying any recovery on A.R.B.'s assault and battery claim.

In *Hayes,* the defendant challenged the sufficiency of the evidence to support a claim of intentional infliction of emotional distress. *Id.* at 164. The appeals court reversed the judgment awarding damages because the plaintiff failed to produce evidence that his emotional injuries were "medically diagnosable and of sufficient severity to be medically significant." *Id.* at 165. The court noted that evidence of "severe emotional distress" was a required element of proof to make a submissible case for intentional infliction of emotional distress. *Id.* at 164.

■■■ By contrast, actual injury or damages is not a required element of proof in an assault and battery action. *Van Eaton v. Thon,* 764 S.W.2d 674, 676 (Mo. App. W.D.1988). Battery is the willful touching of a person of another, as the consummation of an assault. *Armoneit v. Ezell,* 59 S.W.3d 628, 632 (Mo.App.E.D.

2001). Whether or not an injury is proven, a plaintiff is at least entitled to nominal damages upon a finding that an assault and battery occurred. *Van Eaton,* 764 S.W.2d at 676. An injured party may also recover compensatory damages for bodily pain, humiliation, mental anguish and other injuries that occur as a necessary and natural consequence of the tortious conduct. *K.G. v. R.T.R.,* 918 S.W.2d 795, 799–800 (Mo.banc 1996); *Prange v. Prange,* 755 S.W.2d 581, 592 (Mo.App. E.D.1987). "There is no fixed measure or standard available to the trier of fact in determining the measure of damages for pain and suffering. The measure of damages is simply that which is fair and reasonable." *Prange,* 755 S.W.2d at 592 (citations omitted).

■■■ Here, Elkin admitted liability for assault and battery. Based on the facts stipulating tortious conduct against A.R.B., the trial court erred in failing to award nominal damages and consider whether she was entitled to compensatory damages for emotional distress and humiliation. Medical evidence is not required; Elkin's admissions and the trial testimony are sufficient to support A.R.B.'s claim for relief. Accordingly, the judgment is reversed and remanded for proper consideration of A.R.B.'s compensatory damages.[3]

■■■ Appellants also contend the court erred in awarding only nominal damages to A.M.B. based on its finding that A.M.B. presented "no evidence of the value" of his physical and emotional injuries. As noted, there is no fixed measure or standard available to determine damages for emotional injury. *Id.* Damages need not be proven with exact certainty, but rather it is the fact of damages, not the

---

3. It is unclear from the pleadings whether any statutory claim for damages was made pursuant to Section 537.046 RSMo.2000. We note, however, that psychological injury claims for childhood sexual abuse under this statute do not require proof of a physical injury or illness. § 537.046.1(2).

amount, that must be proven with reasonable certainty. *Fust v. Francois*, 913 S.W.2d 38, 47 (Mo.App. E.D.1995). The matter of fixing damages rests in the sound discretion of the trial court but requires the weighing of the relevant facts which show that damage occurred. *Prange*, 755 S.W.2d at 592.

A.M.B. was not obligated to present evidence of the value of his emotional injury in order to recover more than nominal damages. The trial court erroneously applied the law in this regard. On remand, the court shall consider whether additional compensatory damages should be awarded to A.M.B. as a necessary and natural consequence of Elkin's undisputed assault and battery upon him.

### Punitive Damages

■ Appellants pled facts and made requests for admissions on the issue of punitive damages. By not responding to the discovery requests, Howard Elkin admitted that his acts of sexual abuse were outrageous and were committed with evil motive or reckless indifference to the rights of his children. These admissions were sufficient to establish the culpable mental state required for an award of punitive damages. *Fabricor, Inc. v. E.I. DuPont de Nemours & Co.*, 24 S.W.3d 82, 96–97 (Mo.App. W.D.2000). Yet, the record does not reflect that the trial court gave any consideration to the prayer for punitive relief. On remand, the trial court is directed to evaluate and award such punitive damages as are warranted by the evidence in this case.

The judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.

All concur.