IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

MAGETT V. CHI HEALTH IMMANUEL MED. CTR.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

DEBORAH MAGETT, APPELLANT,

V.

CHI HEALTH IMMANUEL MEDICAL CENTER, APPELLEE.

Filed September 2, 2025.    No. A-24-265.

Appeal from the District Court for Douglas County: LEANNE M. SRB, Judge. Affirmed.

Deborah Magett, pro se.

David L. Welch and Maggie L. Brokaw, of Pansing, Hogan, Ernst & Buser, L.L.P., for appellee.

PIRTLE, BISHOP, and WELCH, Judges.

BISHOP, Judge.

## INTRODUCTION

Deborah Magett, pro se, filed a complaint against CHI Health Immanuel Medical Center (CHI) and other defendants alleging medical battery and negligence. She claimed that CHI's staff performed a surgical procedure on her back without her informed consent and that she suffered injury as a result. The Douglas County District Court granted summary judgment in favor of CHI and found the other defendants were either not served, improperly added without the court's approval, or previously dismissed from the case; Magett appeals. We affirm.

## BACKGROUND

### OPERATIVE COMPLAINT

In Magett's operative complaint, she alleged that on October 27, 2020, she sought emergency treatment at CHI for a large, painful, pus-filled abscess on her back. She informed

medical staff that she had diabetes and high blood pressure. She was admitted and placed on intravenous antibiotics and pain medication, with the understanding that a surgical procedure to drain the abscess would be discussed later. She alleged, however, that the details of the procedure and its associated risks were never discussed with her.

Magett alleged that the following day medical staff entered her room and proceeded with the procedure without "any warning, surgery consultations, preparations, and without getting [her] informed consent." Despite her repeated expressions of severe pain and requests to stop, the provider performing the procedure continued to "cut a chunk of [her] flesh out from the abscess" and "brutally squeeze it." Another provider allegedly caused further pain by tightly squeezing her hands during the procedure. Magett asserted that these actions constituted medical battery and negligence. She alleged that as a result she "began to suffer physical pain, emotional pain, mental anguish, trauma, shock, stroke like signs and symptoms, extreme lower, mid, and upper back pain, headaches, eye aches, burning of [her] skin around the abscess, deep cut of [her] flesh, and a chunk of flesh was cut out; it took several months to close up and heal." She sought $6 million in damages: $1 million for past and future medical bills, $1 million for loss of future earnings, $1 million for physical and emotional pain and suffering, and $3 million for punitive damages due to the "barbaric medical treatment" she received and to "deter the defendants from this type of behavior in the future."

MOTION FOR SUMMARY JUDGMENT

CHI filed a motion for summary judgment on February 21, 2024, along with its statement of undisputed facts and evidence index. The motion was based on Magett's failure to produce expert testimony regarding the applicable standard of care and causation.

A hearing on the motion was held on March 6, 2024. The district court began by clarifying that the motion for summary judgment applied only to CHI. The other defendants listed in the second amended complaint were not affected by the motion, as they had either been dismissed by the court or had not been properly served.

In support of its summary judgment motion, CHI offered various pleadings, along with affidavits from two of its physicians, Dr. Michael Hovey and Dr. Sweety Aeilias. The district court received both affidavits into evidence. Both physicians stated that they were familiar with the applicable standard of care, that CHI did not breach this standard, and that Magett did not suffer any injury as a result of the care provided. Dr. Hovey explained that Magett presented to the emergency department with a "large complex soft tissue infected abscess on her upper back with multiple areas of purulent drainage" and the next day "an incision and drainage" of the abscess was performed under his direct supervision. The day after the procedure, Magett requested to have her "IVs taken out" and said she "needed to go home." A nurse explained to her that this was against medical advice and that prescriptions would not be available to her unless she waited for the discharge paperwork. Magett "refused to wait and left against medical advice." Dr. Aeilias was involved as a "hospitalist" in the care and treatment of Magett; Dr. Aeilias' affidavit reflected the same observations and opinions as those contained in Dr. Hovey's affidavit. Magett did not object to CHI's exhibits when they were offered. However, when her offered exhibits were rejected, Magett then objected to CHI's already received exhibits.

Magett attempted to offer six exhibits. Exhibit 8 contained photographs of Magett's back. Exhibit 9 contained portions of Magett's medical and other records from CHI, including several requests to amend her medical records. Exhibit 10 was Magett's affidavit offered to oppose another person's affidavit that was not offered. Exhibit 11 was "some of the CHI . . . medical records amendments that [Magett] asked for," and exhibit 12 was her "Statement of Undisputed Facts in Support of Her Motion in Opposition of Summary Judgement for Michael Hovey." Exhibit 13 was a request for her medical records to be corrected. Various objections were made by CHI, including relevance, hearsay, lack of foundation, and speculation. The district court determined that the exhibits were inadmissible due to lack of relevance and lack of foundation. Magett did not present any other evidence.

FINAL ORDER

On March 14, 2024, the district court entered an order granting summary judgment in favor of CHI. The court concluded that CHI made a prima facie showing of its entitlement to summary judgment by submitting the affidavits of Dr. Hovey and Dr. Aeilias, and that Magett offered no evidence to rebut them. The court further found that Magett failed to disclose an expert witness or provide any expert testimony to support her claim of medical malpractice. Finally, it determined that Magett did not establish the existence of any genuine issue of material fact.

The district court also found that Magett's medical battery claim was, in substance, a medical malpractice claim that had been "recast" as a battery claim. As a result, it determined that the battery claim was "not a separate cause of action." The court further noted that, even if it were considered a separate cause of action, it would be barred by the statute of limitations. The court referenced Neb. Rev. Stat. § 25-208 (Reissue 2016) for a 1-year statute of limitations for a battery claim. (We note here that the inclusion of assault and battery in the 1-year statute of limitations previously set forth in § 25-208 was removed from the statute in July 2000.)

The district court sustained CHI's motion for summary judgment, dismissed all defendants, and dismissed the action with prejudice.

Magett, pro se, appeals.

ASSIGNMENTS OF ERROR

Magett assigns five errors in the "ASSIGNMENTS OF ERROR" section of her brief. She also appears to set forth an additional nine errors in the "HOW THE ISSUES WERE DECIDED" section. Neb. Ct. R. App. P. § 2-109(D)(1)(e) (Rev. 2021) requires a separate and concise assignments of error section stating each assigned error. A pro se party is held to the same standards as one who is represented by counsel. *State v. Anders*, 311 Neb. 958, 977 N.W.2d 234 (2022). We therefore decline to address any assigned errors raised in the "HOW THE ISSUES WERE DECIDED" section of Magett's brief.

We further note that the "ARGUMENT" section of Magett's brief is presented as one continuous argument, with no separate headings or arguments to correlate with any particular assigned error listed in the assignments of error section. In order to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. See *U.S. Pipeline v. Northern Natural Gas Co.*, 303 Neb. 444, 930 N.W.2d 460 (2019). Accordingly, we also decline to address any assigned errors that were not

argued and supported in the argument section of Magett's brief. Ultimately, we can only discern one issue in Magett's argument section that correlates to her assigned errors: The district court erred by granting summary judgment in favor of CHI.

## STANDARD OF REVIEW

An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Woodward v. Saint Francis Med. Ctr.*, 316 Neb. 737, 6 N.W.3d 794 (2024). An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Id.*

## ANALYSIS

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Clark v. Scheels All Sports*, 314 Neb. 49, 989 N.W.2d 39 (2023). The Nebraska Supreme Court has long held that the party moving for summary judgment must make a prima facie case by producing enough evidence to show the movant would be entitled to judgment if the evidence were uncontroverted at trial. *Id.* If the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law. *Id.* But in the absence of a prima facie showing by the movant that he or she is entitled to summary judgment, the opposing party is not required to reveal evidence which he or she expects to produce at trial. *Id.*

To make a prima facie case for medical malpractice, a plaintiff must show (1) the applicable standard of care, (2) that the defendant(s) deviated from that standard of care, and (3) that this deviation was the proximate cause of the plaintiff's harm. *Carson v. Steinke*, 314 Neb. 140, 989 N.W.2d 401 (2023). At the summary judgment stage, it is well settled that a physician's self-supporting affidavit suffices to make a prima facie case that the physician did not commit medical malpractice. *Lombardo v. Sedlacek*, 299 Neb. 400, 908 N.W.2d 630 (2018).

In this case, in addition to the pleadings, CHI offered the affidavits of Dr. Hovey and Dr. Aeilias as evidence in support of its motion for summary judgment. Both physicians stated that they were familiar with the applicable standard of care, that CHI did not breach this standard, and that Magett did not suffer any injury as a result of the care provided.

On appeal, Magett contends that the district court erred in admitting the physicians' affidavits because they contained hearsay and were "vague and ambiguous." Brief for appellant at 19. However, when CHI offered its exhibits at the summary judgment hearing, Magett said, "[N]o, I don't object" when asked by the court if she had any objection to it receiving those exhibits. At that point, the court received CHI's exhibits 1 through 7. It was only after CHI subsequently objected to Magett's exhibits that Magett then stated that she "object[ed] to all of [CHI's] things." She argued that if her photographs of her back were not relevant, then "nothing that [CHI] has is relevant." She then argued, "I do want to object to [CHI's] affidavits, because not only are they

inaccurate and hearsay . . . [but] most of the affidavit for Sweety Aeilias and Hovey are straight untruths and they're not factual." However, at that point, the exhibits had already been received over no objection; thus, Magett's later objections were not timely and failed to preserve for appeal any evidentiary challenges to the exhibits. See *Molt v. Lindsay Mfg. Co.*, 248 Neb. 81, 532 N.W.2d 11 (1995) (plaintiff who did not object when evidence was offered at summary judgment hearing failed to preserve his objection to evidence and waived any complaint about it on appeal).

The more important matter impacting the outcome of this case is Magett's lack of a medical expert to support her claim, which we agree with the district court was a medical malpractice claim and not a battery claim. See *Kant v. Altayar*, 270 Neb. 501, 704 N.W.2d 537 (2005) (battery is intentional tort which includes physical contact with another without consent or justification). Notably, Magett's operative complaint acknowledges that she self-admitted to the emergency room for medical treatment of the "extremely painful, golf ball size, and puss filled, abscess" on her back, that "began to grow approximately a week prior" to her visit to the emergency room. She agreed to being admitted and it was known to her that there would be a "surgical procedure to lance and drain the abscess," although she disputed that the details or risks were discussed with her. While she alleged that "[m]edical battery" was an "intentional un-wanted touch in a medical setting," her factual allegations related to the actions that took place during the surgical procedure necessary to "lance and drain the abscess" that had been growing on her back; it was this procedure that she claimed resulted in her alleged injuries and damages. Therefore, we agree that Magett's alleged battery claim is "simply a malpractice claim she recasts as a battery claim." Brief for appellee at 12.

Once the defendant in a malpractice case states that he or she has met the applicable standard of care, the plaintiff must normally present expert testimony to show that a material issue of fact exists preventing summary judgment. See *Lombardo v. Sedlacek*, 299 Neb. at 418, 908 N.W.2d at 644 ("[E]xpert testimony by a medical professional is normally required to establish the standard of care and causation under the circumstances."). Exceptions to this requirement arise only when the alleged negligence and the causal link to the plaintiff's injuries are presumed to be within the comprehension of laymen. See *id.* Such an exception is not present here.

Because CHI submitted affidavits from its physicians stating that the care provided met the applicable standard of care, the burden shifted to Magett to present admissible evidence establishing a genuine issue of material fact. Magett did not present any evidence at the summary judgment hearing to meet this burden. Although she attempted to offer exhibits, none of them provided the expert testimony necessary to establish the applicable standard of care and to show causation.

Magett makes several factual assertions in her brief and argues that those assertions create a genuine issue of material fact. However, because she presented no admissible evidence in opposition to summary judgment, those assertions are not supported by the record. As the Nebraska Supreme Court has stated, "In connection with a motion for summary judgment, 'unless the evidence is marked, offered, and received, it does not become part of the record and cannot be considered by the trial court as evidence in the case.'" *Controlled Environ. Constr. v. Key Indus. Refrig.*, 266 Neb. 927, 944, 670 N.W.2d 771, 785 (2003), quoting *Hogan v. Garden County*, 264 Neb. 115, 646 N.W.2d 257 (2002). On this record, we find no error in the district court's decision to grant summary judgment in favor of CHI.

## CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment in favor of CHI.

AFFIRMED.